# ROBERT BLICKENSDERFFER v. F. G. HANNA et al., Appellants.

### Division Two, November 29, 1910.

1. **ADMINISTRATION: Sale of Real Estate: Personalty Already Distributed.** Testator died in 1868, and by his will gave his real and personal estate to his only daughter for life, and after her death to her offspring. His widow died in 1870, and the daughter married before testator's death, and died in 1901, and this suit is by her children for the lands, which were sold in 1875 to pay debts, under an order of the probate court. The personal estate was inventoried at $803.85, the records showed allowances amounting to $137.20, and the first annual settlement showed a balance due said estate of $895.21, the second a balance of $882.21, and the third a balance due the executor of $169.14. Vouchers for two of the allowances, amounting to $38, were in evidence. In 1872 the court ordered the executor to deliver the personal property, inventoried at $803.85, to the daughter's husband, which was done and his receipt therefor taken. The executor died and the public administrator in 1875 applied for an order to sell the lands to pay debts, and the court found there were estate debts unpaid and no personal estate to pay the same, and ordered the administrator to sell the lands, which was done. *Held,* that the facts, in view of the order of the court finding there were debts of the estate unpaid, do not show that there were no debts; and, *second,* testator's creditors were not compelled to sue the daughter's husband for the $803.85 of personalty turned over to him, or the bondsmen of the deceased executor before they could resort to the real estate. A creditor should not be relegated to an action on the bond for waste or a misappropriation for which he is in no wise responsible.

2. ————: ————: ————: **Sufficient Notice: Collateral Attack.** If the notice to the heirs and devisees, that application

for the sale of the lands to pay debts had been made, etc., was sufficient to give the court jurisdiction to order a sale, then was their time to contest the order, if they desired to dispute the finding that there was no personal estate or that there were no debts; and if their contest was overruled, they should have appealed, and having done neither they cannot now, in a collateral suit, complain of the validity of the order.

3. ———: ———: **Sufficient Notice: Not in Paper Designated.** Where the order of the court directed that notice of the application for the sale of estate lands to pay debts be published in the "Lebanon Journal" and it was published in the "Lebanon Chronicle," the notice was sufficient to give the court jurisdiction under a statute which did not require the court to designate the paper in which notice should be published, but only required notice to "be published for four weeks in some newspaper in the county in which the proceedings are had;" and the court having accepted the publication as a compliance with its order, the notice cannot be held to have been void in a collateral attack upon the sale.

4. ———: ———: **Private Sale Ordered: Sold at Public Sale.** Where the order of the court was to sell the land at private sale, and the sale, after proper notice in a newspaper and by hand bills, was at public sale, and was approved by the court, the validity of the sale is not opened to collateral attack, for the court had jurisdiction to approve and affirm it. Moreover, a public sale is deemed the fairest.

5. ———: ———: **Judicial Sale: Approval.** A sale of real estate, under an order of probate court to pay debts, is a judicial sale, and the administrator is the officer or agent of the court in making it; and if approved, and the court had jurisdiction over the subject-matter and the parties, its approval and confirmation cures all prior irregularities.

Appeal from Laclede Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*O. L. Cravens* and *L. C. Mayfield* for appellants.

(1) It is undoubtedly true that probate court judgments are not subject to collateral attack, unless it appears to have exceeded its jurisdiction as attested by its own accompanying record. When so shown, its

judgments possess no validity. Langston v. Canterbury, 173 Mo. 131; Hutchison v. Shelley, 133 Mo. 412; St. Louis v. Hollrah, 175 Mo. 85; Desloge v. Tucker, 196 Mo. 601. The order of sale made July 12, 1875, on the petition of Atchley, administrator *de bonis non,* shows that the court found "that the personal estate of the deceased, in the hands of the administrator, is not sufficient to pay the debts due and owing by said estate." The court files show by the application of the administrator (McElvain) to correct the third annual settlement of executor Jones, filed July 14, 1874, "that J. P. Hanna, as representative of the sole heir of said estate, paid all the claims of said estate and that said Wm. Jones never received in his hands or paid off any claims against said estate." Authority and jurisdiction of the probate court to sell land are found only in the fact that such sale is necessary to pay debts. The insufficiency of the personalty for that purpose is the first requisite to jurisdiction. Farrer v. Dean, 24 Mo. 16; Langston v. Canterbury, 173 Mo. 131; Teverbaugh v. Hawkins, 82 Mo. 180. We concede that the finding of the probate court that there was no personal property in the hands of the administrator sufficient to pay the debts due and owing by the estate, cannot be impeached in this collateral proceeding, except by the records and files of the probate court. The first settlement of executor Jones shows that he charges himself with $1120.88, and asks credit for $225.67, and balances the account by showing $895.21 to be due the estate, which is an error, and should be $995.21. His second settlement charges his balance due the estate on the first settlement at $895.21, instead of the true balance of $995.21, and, deducting $13 for disbursements, shows a balance of $882.21, instead of the true balance of $982.21, and his third and last settlement, after deducting $803.25 "by J. P. Hanna's receipt for personal property," manages to bring the estate in his debt $169.14, but the true balance, even allowing him

credit for the J. P. Hanna receipt of $803.25, should be only $69.14 indebtedness of the estate to him. It is true the court by order authorized the executor to deliver to J. P. Hanna the personal property of the estate as inventoried, amounting to $803.85, as shown in the bill of appraisement. There was no law authorizing this to be done, and the order must be treated as a nullity and afforded Jones no protection unless good and sufficient bond be taken as required by article 2, section 63, Wagner's Statutes. That this was not done raises a presumption that there were no creditors of the estate at that date, April 10, 1872, who were not satisfied, the time for proving claims having long since expired, and the property being delivered or ordered delivered to the representative of the sole heir and legatee of the deceased. Wagner's Stats., art. 2, sec. 10. Upon the petition of administrator Atchley, the probate court, on April 14, 1875, made an order of publication reciting and finding "that there is not sufficient assets on hand to pay the same (debts)." The order of sale made July 12, 1875, recites and finds "that the personal estate of the deceased, in the hands of the said administrator, is not sufficient to pay the debts due and owing by the said estate." This equivocal finding does not meet the requirement of the statute. The statute required that, before a sale could be petitioned for and ordered, the "personal estate shall be insufficient" to pay the debts of the estate. The probate court record shows there were no "accounts, lists and inventories" (Wagner's Stats., p. 96, sec. 25) made by Atchley. The only accounts, lists and inventories that the probate court could have had before it were those previously made by executor Jones. These showed, as we have proved, that there was a personal asset of more than $800. Thereby the record of the order of sale by the probate court was impeached by other portions of the record of equal dignity. At most and as to the administrator *de bonis non,* the result

Blickensderffer v. Hanna.

was a claim in his hands in favor of the estate against the bond of executor Jones or against Hanna. This he should have enforced. Orchard v. Wright, 225 Mo. 414. (2) The order of publication on the petition of administrator Atchley to sell the real estate requires that it be published in the Lebanon Journal. The order of sale shows and finds that it was published in the Lebanon Chronicle and not in the Journal. The defect is fatal to the jurisdiction to make the order. If it is required to be published in some newspaper in the county, by the principle governing the power under which courts of like jurisdiction act, it had authority to designate the paper, and by so doing it exhausted its authority. Cunningham v. Anderson, 107 Mo. 371. The court's directions must be followed. 17 Am. & Eng. Ency. Law (2 Ed.), 966. And this must be so whether the defendant was prejudiced or not. Brisbane v. Peabody, 3 How. Prac. 109; State ex rel. v. Reid, 134 Mo. App. 582. (3) It clearly appears by the probate court records that a private sale was ordered. It is equally clear that the sale was at public auction, as shown by the order of approval and report and the deed to plaintiff. This court may have gone far in holding the order of approval of a sale by the probate court to cure prior irregularities, but it has not yet held, so far as we can find, that a sale held at public auction in violation of an order to sell at private sale is valid. It must be conceded that a probate court, subsequent to a term at which it rendered a judgment, has no power to alter or revise such judgment. Peake v. Read, 14 Mo. 79; 1 Woerner's Am. Law Adm. (2 Ed.), *331, sec. 146. Such being the law, it must be conceded that the order approving the sale cannot be taken as a revision or modification of the prior order of sale, and it remains to be determined whether the sale at public auction by the administrator is a mere informality; if it be not such then the sale is void. To hold otherwise

231 Sup.—7.

would, in effect, be a collateral attack on such prior order, through the office of the order of approval. 1 Wagner's Stats., p. 97, sec. 26; 1 Woerner's Am. Law Adm. (2 Ed.), *328, sec. 145. A private sale confers no title unless the order given by the court under its statutory powers so directs. Fambro v. Gantt, 12 Ala. 298; Schlicker v. Hemenway, 110 Cal. 579. "The approval . . . . is in effect a judgment that the sale has been conducted according to law and the order of the court." Hughes v. McDivitt, 102 Mo. 77. But the judgment approving the sale here stands impeached by the order of sale, which shows the sale not to have been held as ordered. Failure to follow the order requiring the holding of private sale is fatal to plaintiff's title. Luttrell v. Wells, 97 Ky. 84; Ellet v. Paxson, 2 W. & S. (Pa.) 418; Covington v. Chamblin, 156 Mo. 587; 17 Am. & Eng. Ency. Law (2 Ed.), 816; 1 Wagner's Stats., p. 119, sec. 1; Grayson v. Weddle, 63 Mo. 523; Cunningham v. Anderson, 107 Mo. 371; Gaines v. New Orleans, 73 U. S. 642; Gaines v. De La Croix, 73 U. S. 719. The probate court lost jurisdiction (a) upon the failure of the administrator to publish the order of publication in the Journal, or (b) it lost jurisdiction upon the failure of the administrator to hold a private sale as directed by the order. In one event or the other, the jurisdiction was lost and the subsequent approval of the sale was void. State ex rel. v. Mitchell, 115 S. W. (Mo. App.) 1098; State ex rel. v. County Court, 119 S. W. (Mo. App.) 1010; Walser v. Gilchrist, 220 Mo. 314. Where the manner of selling the real estate of a deceased person is ordered by the court, the executor or administrator must strictly conform to its requirements. Reynolds v. Wilson, 15 Ill. 394; Gould v. Garrison, 48 Ill. 258; Hand v. Matter, 73 Mo. 457. In making the sale the administrator must comply with every essential requirement of the statute and strictly follow the directions of the court. Tennant v. Pattons, 6 Leigh (Va.) 196; Wyman v. Campbell, 6 Port. (Ala.)

219; Worthy v. Johnson, 8 Ga. 236; Filmore v. Reithman, 6 Colo. 120; Vance v. Maroney, 4 Colo. 47; Lockwood v. Sturdevant, 6 Conn. 373; Berger v. Duff, 4 Johns. Ch. 368; Cruikshank v. Luttrell, 67 Ala. 318; Reed v. Aubrey, 91 Ga. 435. (4) Unless there be a previous court order made authorizing the sale made by the administrator, it has no validity. It was within the power of the court to order either a public or private sale. Having ordered a private sale, it in effect ordered the land to not be sold at public sale. Therefore, the public sale is as though no previous order had been made at all; and the sale here is void. Evans v. Snyder, 64 Mo. 516; Green v. Holt, 76 Mo. 677; Melton v. Fitch, 125 Mo. 281; Hutchinson v. Shelley, 133 Mo. 400; Burnham v. Hitt, 143 Mo. 414; Lessee v. Park, 4 Ohio 5.

*W. I. Wallace* for respondent.

(1) The judgment, orders and decrees of courts having the probate jurisdiction upon matters and between parties over which the court has jurisdiction cannot be collaterally questioned. Camden v. Plain, 91 Mo. 117; Sherwood v. Baker, 105 Mo. 472; Macey v. Stark, 116 Mo. 481. Probate courts are courts of superior though limited jurisdiction, whose judgments are not subject to collateral attack. Brawford v. Wolfe, 103 Mo. 391. Price v. Real Estate Assn., 101 Mo. 107. (2) Orders of sale to pay the decedent's debts are judgments and such orders cannot be attacked collaterally. Grayson v. Weddle, 63 Mo. 523. (3) Irregularities in an administrator's sale cannot be attacked or impeached collaterally. Rugle v. Webtser, 55 Mo. 246; Tutt v. Boyer, 51 Mo. 425; Noland v. Barrett, 122 Mo. 181; Melton v. Fitch, 125 Mo. 281. (4) In this case, the judgment of the probate court ordering the sale of the land of Lewis Keedy, deceased, recited that there were debts unpaid and that there was no personal

property to pay the same, and that it was necessary to sell the land in order to pay the debts. Such an order of sale, regular in form, with these recitals, was a judgment, and conclusively estops the heirs of the decedent from setting up the untruth of these recitals; and as to whether or not there were debts, and whether or not there was personal property sufficient to pay them, are facts concluded by this judgment, and it is not available to the heirs to make a collateral attack upon the judgment, when the land is in the hands of an innocent purchaser for value. Grayson v. Weddle, 63 Mo. 523; Macey v. Stark, 116 Mo. 481; Rogers v. Johnson, 125 Mo. 202; Melton v. Fitch, 125 Mo. 281; Davis v. Gaines, 104 U. S. 386. At any rate, in this case there was evidence to show that there were unpaid claims in existence at that time. (5) Another objection is that the order of publication giving notice of the application of the administrator for an order of sale, directed publication in the Lebanon Journal, whereas it was published in the Lebanon Chronicle. The judgment of the probate court ordering the sale and reciting that the notice of the application had been duly published, and the final order confirming the sale, entirely cured any such defect. See authorities previously cited. It could make no difference to the estate in what paper the notice of the application for an order of sale was given. The important question was that notice should be given as the statute required. The court had the right to select any paper, and the publication in any paper answered the provisions of the statute; and although it was published in a different paper, such error, if any, was trivial, in which the estate suffered no wrong and has no ground for complaint. But, as we have said, the order of the court confirming the sale cured all prior irregularities. Robbins v. Boulware, 190 Mo. 33; Covington v. Chamblin, 156 Mo. 587; Langston v. Canterbury, 173 Mo. 131. (6) Again, the order of the court was that there should

be a private sale, and the sale as in fact made was a public one. The court had the right to order either a private or a public sale, and the mere irregularity of selling at a public sale when a private one had been ordered is not available for collateral attack under the authorities previously cited. The only matter in which the estate was interested was that the sale should be given the fullest publicity, extending to would-be purchasers an invitation to be present and bid on the land. The order confirming the sale, as heretofore given, shows as a part of the judgment, "That said sale was legally and fairly conducted pursuant to the order of the court and in accordance with the statute." Such finding of the probate court effectually estops the appellants from making the objection to the validity of the sale. At best, it was an irregularity, cured by the judgment confirming the sale, and is no longer available to the heirs. An adjudication of a probate court, in confirmation of a sale, that notice has been duly posted, is not subject to collateral attack. Richardson v. Butler, 16 Am. St. Rep. 101; Saltonstall v. Riley, 65 Am. Dec. 334. A want of sufficient notice of a sale by an administrator renders the sale voidable only, and not void, and the sale cannot be attacked collaterally. McNair v. Hunt, 5 Mo. 301. The deed of the administrator conveying the land of decedent to the respondent was properly executed and acknowledged, and contained all the recitals required to be made by law, is evidence of the facts therein stated, and has the effect to convey to the purchaser all the interest of the deceased. Camden v. Plain, 91 Mo. 117; Knowlton v. Smith, 36 Mo. 507.

GANTT, P. J.—This is an appeal from a decree of the circuit court of Laclede county, determining the title to two hundred acres of land in Laclede county, to-wit, the northeast quarter and the northwest quar-

ter of the southeast quarter, all of section 25, township 34, range 15, to be in the plaintiff.

The defendants are the devisees of Lewis Keedy, who died in said county in 1868, leaving a last will, which was duly probated. By his will he gave the land in suit to Caroline E. Morelock for her natural life and at her death to her offspring. Mrs. Polly Keedy, the testator's widow, died in 1870. Mrs. Morelock, after the execution of the will, but before her father's death, intermarried with J. P. Hanna. Of this marriage three children, Mrs. Christina Burch, Mrs. Mazie Bradley and Farmer G. Hanna, were born, and survived their mother, Mrs. Hanna, who died January 9, 1901, and they assert title to said land under the will of their grandfather, Lewis Keedy.

Plaintiff claims title under an administrator's sale of said land, made in 1875, under an order of the probate court. By this appeal the validity of the probate proceedings under which the lands were sold and conveyed to plaintiff, are brought in question. The bid of the plaintiff for the two hundred acres was $190.

Subsequently some question arose as to the interest which Mrs. Morelock (afterwards Mrs. Hanna), took under the will, and plaintiff paid her $536, for a quitclaim deed to the land.

The contention of the defendants is that the administrator's sale and deed were and are void for the following reasons: First, because there were no unpaid debts of the testator for which said lands could be sold; second, the order of publication required the notice to the heirs to be published in the Lebanon Journal, but it was published in the Lebanon Chronicle; third, the order required a private sale, but it was sold at a public sale, without a previous order for a public sale.

These propositions will be considered in their order, in the light of the record.

I. The administrator's deed recites that on July 12, 1875, at its July term, 1875, the probate court of Laclede county, by its entry ordered said administrator to sell the land in controversy to pay off and discharge the debts of the testator, Lewis Keedy, at public sale, for cash in hand; that previous to the day of sale, said administrator caused a notice that said real estate would be sold at public sale on October 11, 1875, at the courthouse door in Lebanon, for cash in hand, to be published in the Lebanon Chronicle, a newspaper published in said county, for four weeks, and also caused a copy of such notice to be put up in ten public places in said county twenty days before said sale; that he caused said real estate to be duly appraised by three householders (naming them), who appraised the same at $300 and so certified under their oaths; that at said sale Robert Blickensderffer was the highest and best bidder for $190, and the same was stricken off to him, and that at the next term said administrator made report of his proceedings to the probate court, which by its order of record approved the same, and in pursuance of the premises and the payment of the said sum he conveyed the said land to said purchaser. To impeach and avoid said deed, defendants offered and read in evidence the inventory consisting of a long list of horses, cattle, hogs, farm implements and household goods; also notes and accounts to the amount of $317.03. Defendants also read in evidence the appraisement of the said personal estate amounting to $803.85. Defendants also read the record of allowances against said estate, consisting of one for $25 in favor of John W. Wilkinson, in the first class; one in favor of the administrator of Keedy, Givens & Co., Alfred Case, Admr., for $54.30, fifth class; one in favor of H. F. Johnson, for $13; one in favor of S. W. Barnes, fifth class, for $5.30; one for $4.60 in favor of Mary Davis, and one in favor of Fy. Jones, administrator of Wm. Jones, for $35.

Defendants also read in evidence vouchers for payments of the allowances to Wilkinson, to Johnson, and receipts for printer's fees and probate costs. Defendants also read in evidence the first, second and third annual settlements of Wm. Jones, the executor of said estate. The first settlement showed a balance due the estate of $895.21; the second, a balance of $882.21, and the third a balance of $169.14 due the executor.

Defendants also read in evidence an order of the probate court of April 10, 1872, directing the executor to deliver the personal property inventoried to J. P. Hanna and take his receipt for $803.85, which he did, and his voucher therefor was filed in the third annual settlement.

It appears that the executor (Jones) died, and one McElvain was appointed administrator *de bonis non*, in 1873. He was afterwards removed and the estate was ordered into the hands of N. D. Atchley, public administrator, who afterwards filed the petition for the sale of the lands and made said sale and deed. The petition alleged that there were debts unpaid; that no personal property had come into the hands of the administrator belonging to said estate; that there was no property except real estate; that it was necessary to sell said real estate or a part thereof to pay said debts, and set out a description of the lands, and prayed for an order of sale. The court made the order of publication on April 14, 1875, requiring the same to be made in the Lebanon "Journal," and on July 12, 1875, made the order of sale.

In support of their contention that there were no unpaid debts for which the lands could be sold, defendants introduced J. P. Hanna, who testified that he paid the Keedy, Givens & Co. allowance of $54.30, *at least* "*that was his recollection.*" He also testified that he paid the $35 allowance to Jones. He testified that Mr. Wallace, attorney for plaintiff, knew that he, Hanna, had paid all these claims against Keedy's estate.

On the other hand, the probate court found there were debts of the estate unpaid, and that there was no personal estate to pay the same, and Mr. Case, the administrator of Keedy, Givens & Co., testified J. P. Hanna did not pay said allowance; that it was paid by Mr. Wallace, as attorney for the public administrator, Atchley, out of the proceeds of the sale of the lands. Mr. Wallace denied that he knew the claims were all paid. We think the contention that there were no unpaid debts when the order of sale and the sale were made is unsupported by the record. Neither the testimony of J. P. Hanna that he paid the debts, *to the best of his recollection,* nor the *ex parte* order reciting the debt had been paid, was conclusive upon the probate court. That evidence was directly contradicted by Case, the administrator of Keedy, Givens & Co., and there was no voucher therefor. The probate court was possessed of jurisdiction to determine that fact and its adjudication is not open to collateral attack in this collateral proceeding. Defendants could have appealed from that judgment if dissatisfied with it.

It is insisted also that the order of sale was void for the reason that the record of the probate court in this particular estate showed that there was sufficient personal estate to pay the unpaid debts, to-wit, the claim of the estate against the bondsmen of Wm. Jones, the executor, who had paid over to J. P. Hanna $803.25 under the order of the probate court, and also against said Hanna.

Learned counsel for defendants concede that the judgments of probate courts in this state in causes within their jurisdiction are entitled to all the presumptions of a court of general jurisdiction and are not subject to collateral attack, but insist that, like courts of general jurisdiction, they may be attacked collaterally by their own records of equal dignity, showing they had no jurisdiction in the given cause. Counsel admit that the finding of the probate court

that there was no personal estate *in the hands* of the administrator sufficient to pay the debts due and owing by the estate cannot be impeached collaterally in this proceeding except by the record and files of the probate court, but insist this was done by the record showing the court had ordered the executor (Jones) to deliver the personal estate amounting to $800 to J. P. Hanna, without bond to refund for the benefit of creditors.

Counsel insist that the finding of the probate court "that the personal estate of the deceased, *in the hands* of the said administrator, is not sufficient to pay the debts due and owing by the said estate," is *equivocal* and falls short of the requirement of the statute; that before real estate can be sold for the payment of the debts of a deceased person, it must appear that his personal estate *shall* be *insufficient* to pay his debts and legacies. [Wagner's Statutes 1872, art. 3, sec. 10.]

Was the order of sale void and unauthorized because the record showed that the estate consisted, in part, at the death of the testator, of personal property to the amount of $800 which would have been amply sufficient to have paid all the debts of the estate, but this personalty was turned over to J. P. Hanna, as representative of his wife, the then sole devisee of said estate, by order of the probate court? Hanna was the husband of the only daughter of the testator and by the will this personal property was bequeathed to the widow of the testator, who died in 1870. When this order was made the creditors whose claims were unpaid were not in court, but it was represented to the court all the debts had been paid by J. P. Hanna.

The question is, were the creditors compelled to sue Hanna, or the bondsmen of Jones, the executor who had died, for this $800, before they could resort to the real estate? We think not. We think the principle was properly ruled in Van Bibber v. Julian, 81 Mo. l. c. 625, wherein on a like contention this court said it

would not require a creditor, "to resort to a suit on the bond of the administrator, with the trouble, expense and delay incident thereto," before proceeding for an order for a sale of real estate. While the statute wisely requires the personal estate to be applied first to the payment of debts of the deceased, a creditor should not be relegated to an action on the bond for waste or misappropriation for which he is in no way responsible, and in this case the representative of the heir seems to have brought about the condition of which his children now complain.

But independent of this consideration, if the notice to the heirs and devisees was sufficient to give jurisdiction, which we will consider later, if they desired to contest the finding that there was no personal estate, and were dissatisfied with the order of sale, they should have appealed from the order and cannot assail it in this collateral way. [Wolf v. Robinson, 20 Mo. 459; Grayson v. Weddle, 63 Mo. l. c. 536; Melton v. Fitch, 125 Mo. 281.]

II. Was the notice to the heirs and devisees void because the court ordered it published in the Lebanon "Journal" but it was in fact published in the "Chronicle" newspaper? The statute governing the proceeding was section 25 of article 3 of Wagner's Statutes 1872 (then in force), and was as follows: "Section 25. When such petition, and such accounts, lists and inventories shall be filed, the court shall order that all persons interested in the estate be notified thereof and that unless the contrary be shown, on the first day of the next term of the court, an order will be made for the sale of the whole, or so much of said real estate as will pay the debts of the deceased. Such notice shall be published for four weeks in some newspaper in the county in which the proceedings are had, or by ten handbills, to be put up at ten public places in said county, at least twenty days before the term of the court at which any such order will be made, in the discretion

of the court.'' The notice in this case was published in a newspaper published in the county, for four weeks, to-wit, the Chronicle, but not in the Journal, the paper designated by the court, and the court so found before it made the order of sale.

It will be observed that the statute does not require the court to *designate the* newspaper in which the order shall be published. The statute in this respect is unlike the statute governing orders of publication in actions under the Civil Code, section 581, Revised Statutes 1899, which provides the notice shall be published in the newspaper, that the plaintiff or his attorney *"with the approval of the judge or clerk making the order, may designate* as most likely to give notice to the person to be notified.''

This section has been construed and it has been held that a failure to designate in the order the paper, with the approval of the judge, or clerk, if in vacation, was fatal to the jurisdiction of the court. [Otis v. Epperson, 88 Mo. 131.] Whereas under the practice of the Act of 1855, the failure of the clerk to designate the particular newspaper in which the notice should be published, although an error, was held not to be such an one as would destroy the judgment in a collateral proceeding. [Kane v. McCown, 55 Mo. 1. c. 195-6.]

An order of publication under our statute law is substituted process. It is the means resorted to of giving the defendant notice in cases where the ordinary process of law, the service of a writ of summons personally upon a defendant, cannot be made. Being only constructive notice, it has been uniformly ruled that a strict compliance with the statute must be observed to give the court jurisdiction. In this case the statute required the notice to be ''published for four weeks *in some newspaper* in the county in which the proceedings are had,'' etc. This was done. The law did not require the court to designate the newspaper, but

it did. The failure to obey the order of the court in this non-essential particular was at most but an error of irregularity. The fact appeared to the court and it accepted the publication as sufficient. There is such a marked difference between the requirement of the Administration statute and that governing practice under the Civil Code that the decision in Otis v. Epperson, 88 Mo. 131, cannot be held to apply, and if the order of publication in Kane v. McCown, 55 Mo. l. c. 195, was not void, even under the Civil Code, *a fortiori*, the publication in this case cannot be held void in this collateral proceeding. It was not mandatory upon the court to designate any particular paper.

In this connection our attention is directed by defendant's counsel to State ex rel. v. Baldwin, 109 Mo. App. 573. We think the language of the Local Option statute is materially different from the Administration statute under review, and that fact calls for a different construction, without impinging upon the authority of that case or the opinion in State ex rel. v. Reid, 134 Mo. App. 582.

The publication met the requirements of the statute, and the mere fact that it was not published in the paper designated, but was published as the law itself required, cannot be held to have deprived the court of jurisdiction to make the order, especially as the court accepted it as a compliance with its order.

III. It is next urged that the sale was void because the court directed a private sale, whereas the administrator *de bonis* sold it at public sale after having advertised it for sale in the newspaper and by handbills. This sale was duly approved, but it is insisted that as the sale was void, the approval was incapable of rendering it valid. On this point, it must be constantly kept in view that this was a judicial sale, and the principles governing that character of sale must govern. It is familiar law that, in a judicial

sale, the court ordering and approving the sale is regarded as the contracting party on one side, and the bidder on the other.

In Anderson v. Scotton, 2 Bland's Ch. 643, it was held that if a trustee directed to sell at public sale does notwithstanding sell at private sale, the sale will be confirmed, if satisfactory reasons are given for so doing and no objection is made.

This was said in a direct appeal, but the rule is much stronger when such an approval is assailed collaterally, as in this case. Moreover, with us the public sale is deemed the fairest, and where, as here, the order was for private sale and the sale was public and fully reported to the court and approved, we can no longer doubt that the court had jurisdiction to approve and confirm it, and its judgment is not open to this collateral attack.

The administrator is regarded as the officer or agent of the court in making the sale. In Cunningham v. Schley, 6 Gill (Md.), l. c. 229, on this point, it was said: "If, for reasons deemed sufficient by the court, the agent departs from the form in which he is to exercise his authority, who could have a right, merely upon the ground of such departure, to say that the principal should not ratify the act of his agent?" Again and again this court has held sales of real estate under orders of the probate courts to be judicial sales, and the confirmation of such sales by the probate court is the crowning act and cures all prior irregularities, provided of course, always, that the court had obtained jurisdiction of the subject-matter and over the parties. [Robbins v. Boulware, 190 Mo. 33; Noland v. Barrett, 122 Mo. 181-189; Melton v. Fitch, 125 Mo. 281.]

Having carefully considered each assignment of error, we are of opinion that they are neither singly, nor collectively, sufficient to render the administration sale and deed void, and for the reasons given the

judgment of the circuit court is affirmed. *Burgess, J.,* concurs; *Kennish, J.,* not having been a member of the court when the cause was argued, takes no part in the decision.