BROWN v. FLEMING, Sheriff, et al.
(No. 57–2772.)

CAVITT et al. v. BEALL HARDWARE & IMPLEMENT CO. (No. 102–3227.)

(Commission of Appeals of Texas, Section B. May 28, 1919.)

1. APPEAL AND ERROR ⟜781(2) — MOOT QUESTIONS—INJUNCTION SUIT.

The relief prayed for by plaintiff in an injunction suit against the sale of property by the sheriff cannot be granted, where the sale has taken place subsequently to the rendition of judgment in the trial court, so that the appeal therefrom involves only moot questions, except in so far as the determination of costs is concerned.

2. APPEAL AND ERROR ⟜781(2) — DETERMINATION OF MOOT QUESTIONS — LIABILITY FOR COSTS.

The Supreme Court will not decide moot questions in an injunction suit merely to ascertain who is liable for costs.

3. EXECUTORS AND ADMINISTRATORS ⟜272— PAYMENT OF DEBTS OF DECEDENT—PRIMARY FUND.

Personal property is the primary fund for the payment of the debts of a decedent.

4. COURTS ⟜200½—PROBATE JURISDICTION —DETERMINATION OF TITLE TO PERSONALTY.

The county court is without jurisdiction to determine title to the personal property of a decedent on the application of his son to have the administrator deliver the property to him.

5. EXECUTORS AND ADMINISTRATORS ⟜72— CONCLUSIVENESS OF INVENTORY—STATUTE.

Neither the original nor the corrected inventory of the personalty of a decedent is conclusive for or against the administrator under Rev. St. 1911, arts. 3337–3348.

6. EXECUTORS AND ADMINISTRATORS ⟜325— SALE OF LAND TO PAY DEBTS—LOSS OF PERSONAL ESTATE.

If the personal property belonging to the estate of a decedent had been lost by the wrongful act of a former administrator, decedent's land could nevertheless be sold to pay his debts before exhaustion by the creditors of their remedy against the administrator.

7. EXECUTORS AND ADMINISTRATORS ⟜325— PAYMENT OF DEBTS—RESORT TO REALTY— EXHAUSTION OF PERSONALTY.

Under Rev. St. 1911, art. 3235, though the personal estate of a decedent is the primary fund for the payment of his debts, the personalty need not be exhausted in the sense that before the administrator can resort to the realty all of the personal assets should be reduced to possession by him.

8. EXECUTORS AND ADMINISTRATORS ⟜358 (1)—SALE OF LAND TO PAY DEBTS—POWER OF DISTRICT COURT.

The district court, on appeal in proceedings for the sale of land of a decedent to pay debts, has no greater power than the county court had originally.

9. EXECUTORS AND ADMINISTRATORS ⟜334— SALE OF REALTY FOR DEBT—DEVASTAVIT BY ADMINISTRATOR.

Where the question whether an administrator had committed a devastavit could be determined only by suit, a creditor of the estate was not required to postpone collection of its debt and sale of realty of the estate to satisfy the debt, until litigation over the question of devastavit should be determined by the court of last resort.

10. EXECUTORS AND ADMINISTRATORS ⟜349 (2)—SALE OF PROPERTY FOR DEBTS — JUDGMENT OF COUNTY COURT—COLLATERAL ATTACK.

The county court, so far as the administration of estates of decedents is concerned, is a court of general jurisdiction, having jurisdiction to sell property for the payment of debts, and its judgment, in such regard, where jurisdiction over an estate is once acquired, is as binding as that of any other court, and not subject to collateral attack.

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**11. EXECUTORS AND ADMINISTRATORS ☜72—**
INVENTORY — JURISDICTION OF COUNTY
COURT.

The inventory of a decedent's estate required by Rev. St. 1911, arts. 3330–3349, to be filed by the administrator, should be at least prima facie a guide for the county court in respect of what property belongs to the estate and comes under the jurisdiction of the court.

**12. EXECUTORS AND ADMINISTRATORS ☜70—**
ELIMINATION OF PROPERTY FROM INVENTORY.

Where an administrator, while inventorying the personalty of the estate, apprised the county court that it was claimed by decedent's son, who applied to have the property turned over to him, an application which the court granted, and the administrator turned the property over, the effect of the order was to eliminate the property from the inventory, at least until some action was taken in a court of competent jurisdiction to recover it.

**13. EXECUTORS AND ADMINISTRATORS ☜72—**
APPLICATION FOR SALE OF REALTY TO PAY
DEBTS—ATTACKING CORRECTNESS OF INVENTORY.

Where, when district court entered order denying administrator's application for sale of realty to pay debts, certain personalty was not in his hands as administrator, and was not even a part of his inventory, having been turned over to decedent's son, who claimed it, pursuant to the order of the county court, and no objection was made to the inventory, which did not refer to the personalty, decedent's creditor cannot, by way of contest of the application for sale by the administrator, inject the issue of the correctness of the inventory.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by J. E. Brown, administrator, against S. S. Fleming, Sheriff, and others, and contest by the Beall Hardware & Implement Company of application to sell land to pay debts by J. F. Cavitt, administrator, and others. From judgment for plaintiff Brown in the first suit, defendants appealed to the Court of Civil Appeals, which reversed and remanded (178 S. W. 964), and plaintiff brings error. From judgment for the administrator and others in the second case, contestant appealed to the Court of Civil Appeals, which remanded the case, with instructions (204 S. W. 798), and the administrator and others bring error. In both cases, judgments of the Court of Civil Appeals and the trial court reversed, and both causes remanded, with instructions ·to dismiss the first suit, etc.

In Case No. 57–2772.

D. A. Kelley, of Waco, for plaintiff in error.

L. Aubrey, of Waco, and Neyland & Neyland, of Greenville, for defendants in error.

In Case No. 102–3227.

D. A. Kelley and Allan D. Sanford, both of Waco, for plaintiff in error.

Neyland & Neyland, of Greenville, Marshall Surratt, of Waco, for defendants in error.

McCLENDON, J. The two causes mentioned in the caption were consolidated by order of the Supreme Court, after writs of error had been granted.

The cause first mentioned was a suit brought by J. E. Brown, in his capacity as administrator of the estate of C. R. Phillips, deceased, in the district court of McLennan county, against the sheriff of that county and Beall Hardware & Implement Company, to restrain a sale of eight acres of land belonging to the estate of C. R. Phillips, deceased, under an order of sale upon a judgment of the district court of Hunt county, in which judgment the hardware company had recovered a personal judgment against three of the heirs of C. R. Phillips, with foreclosure of an attachment lien levied upon the interest of said heirs upon the eight acres of land in question. The district court denied the injunction, and the Court of Civil Appeals of the Third District (178 S. W. 964) reversed the judgment of the district court, and remanded the cause to that court, with the instruction to dismiss the case on the ground that the district court of Hunt county alone had jurisdiction of the cause.

[1] It appears from the record in the second case above mentioned, that subsequently to the rendition of judgment in the trial court in the injunction suit, the sale of the property under the Hunt county judgment has been proceeded with, and the land bought in by the hardware company. Under this state of the record, the relief prayed for by the plaintiff in the injunction suit cannot now be granted, as the sale has already taken place, and the correctness of the decisions of the trial court and the Court of Civil Appeals involve only moot questions, except in so far as the determination of costs is concerned.

[2] Since the cases of Gordon v. State, 47 Tex. 208, and Laccoste v. Duffy, 49 Tex. 767, 30 Am. Rep. 122, to use the language of Chief Justice Roberts in the latter case:

"It has not been customary in this court to decide questions of importance after their decision has become useless, merely to ascertain who is liable for the cost. The amount of business of practical importance would forbid that the time of the court should be so occupied."

We believe the decision in that case has been uniformly followed. McWhorter v. Northcutt, 94 Tex. 86, 58 S. W. 720; Riggins v. Richards, 97 Tex. 526, 80· S. W. 524.

In the case of Bolton v. City of San Antonio, 4 Tex. Civ. App. 174, 23 S. W. 279, the

same principle was applied to injunction cases. There the city of San Antonio and its officers were sought to be enjoined from issuing certain negotiable coupon bonds of the city, on the ground of their alleged invalidity. The trial court sustained a demurrer to the petition, and dismissed the suit. On motion for rehearing in the Court of Civil Appeals, it was admitted that, since the action of the trial court, the bonds had been issued. Following the case of Laccoste v. Duffy, above, the Court of Civil Appeals declined to consider the merits, and dismissed the case, the court saying:

"Whether rightfully or wrongfully done, it is useless for us now to undertake to determine, for appellees cannot now be restrained from doing that which they have already done. Should this cause be remanded to the trial court, upon its being made to appear that the bonds have been issued and sold, it could only dismiss it, or render judgment for appellees."

For other cases upon this question, see Michie's Texas Digest, vol. 1, pp. 365, 367, and Corpus Juris, vol. 4, pp. 1135, 1136, and note 28.

We, therefore, conclude that there is now no controversy, so far as the injunction suit is concerned, that can be determined by the Supreme Court.

The second case mentioned in the caption arose in the county court of McLennan county upon a contest filed by the hardware company to an application of the administrator to sell the land in question for the purpose of paying debts of the deceased. The Court of Civil Appeals remanded the case to the district court, with instructions to try the issue as to the present availability of certain personal property as assets in the hands of the administrator, before resorting to a sale of the real estate. 204 S. W. 798.

The record in this case shows the following facts:

C. R. Phillips died intestate on September 10, 1913; and on November 3d following J. E. Brown was appointed administrator of his estate by the county court of McLennan county. On November 23, 1913, the administrator filed an inventory, appraisement, and list of claims of the estate, listing, among other property, certain personal property, consisting of live stock and farming implements, appraised at $1,895 in the aggregate. As to this personal property, the inventory states:

"In making this inventory it is proper to state to the court that Earnest Phillips, a son of the deceased, claims to own the following items of personal property in the foregoing inventory."

This is followed by a list of the personal property referred to. This inventory was approved. On December 10, 1913, Earnest Phillips filed in the county court a petition seeking to have the administrator deliver this property to him, he claiming to be the owner thereof. Upon hearing of this petition, the court on January 17, 1914, adjudged the property to belong to Earnest Phillips, subject, however, to a mortgage in favor of the First National Bank of McGregor, and ordered it turned over by the administrator to Earnest Phillips. There was no appeal from this order. On April 3, 1914, the administrator Brown filed an application to sell the land in question, which appeared from the orders of the court and the several reports of the administrator to be the only property of the estate not converted into cash. It was also shown that the cash on hand was not sufficient to pay the debts of the estate. This application was contested by the hardware company as owner of the interest in the land of three of the heirs under the foreclosure above referred to. The pleadings upon this contest are rather voluminous, and we deem it unnecessary to notice them, further than to state that it was contended by the hardware company that the order finding that the personal property above referred to belonged to Earnest Phillips, and requiring the administrator to turn it over to him, was void; that this property still constituted an asset of the estate, and that the administrator should be required to make good the appraised value thereof, the result of which would be that there would be no necessity to sell the real estate. As we construe the pleadings of both parties, it was conceded that the administrator had complied with the order of the court, and that the personal property had been turned over to Earnest Phillips under said order, and was no longer in the custody of the administrator.

On February 14, 1916, upon hearing of the application to sell the real estate, the court held that the contest of the hardware company showed no sufficient grounds for setting aside the previous orders of the court had in the administration, sustained a general demurrer to the contest, granted the application of the administrator, and ordered the property sold. The hardware company appealed from this order to the district court, but before the matter was tried in that court the administrator Brown died, and J. F. Cavitt was appointed administrator de bonis non. Cavitt qualified and filed an inventory, appraisement, and list of claims showing that the only property which came into his hands as administrator was cash amounting to $79.14, of which $54.14 was balance in the hands of Brown at the time of his death. This inventory contains the following:

"All of the balance of the property originally belonging to the estate has been disposed of pursuant to the orders of this court in due course of administration by J. E. Brown, so far as the knowledge of the affiant extends."

No objection appears to have been made to this inventory.

The district court, upon hearing of the application for the sale of the real estate, held that the exceptions of the administrator, which were joined in by the First National Bank of McGregor, one of the chief creditors of the estate, were not well taken, and denied the application for sale of the real estate, and certified his ruling to the county court. From this judgment the administrator Cavitt and the bank appealed.

The Court of Civil Appeals of the Third District reversed the judgment of the district court, and remanded the cause, with instructions to try the issue as to the present availability of the personal property as assets in the hands of the administrator Cavitt, and to enter judgment for or against said administrator, according as such facts should be found in his favor or against him.

The following conclusions reached by the Court of Civil Appeals, in our opinion, are correct:

[3] 1. That personal property is the primary fund for the payment of the debts of a decedent. Minter v. Burnett, 90 Tex. 248, 38 S. W. 350.

[4] 2. That the county court was without jurisdiction to determine the title to the personal property upon the application of Earnest Phillips. Wise v. O'Malley, 60 Tex. 588; Timmins v. Bonner, 58 Tex. 555; Edwards v. Mounts, 61 Tex. 398.

[5] 3. That neither the original nor the corrected inventory is conclusive for or against the administrator. Rev. St. arts. 3337-3348; White v. Shepherd, 16 Tex. 168.

[6] We have reached the conclusion that the Court of Civil Appeals was further correct in holding that, if the personal property belonging to the estate had been lost by the wrongful acts of the former administrator, this would present no reason why the land should not be sold to pay the debts of the estate, although, as we shall show hereafter, the decisions of some states are to the effect that before resorting to the real estate, the creditors would be required to exhaust their remedy against the administrator and his bondsmen, where it was shown that the administrator had wasted the assets of the estate that had come into his hands.

We are of opinion, however, that the Court of Civil Appeals committed error in remanding the cause to the district court to determine whether or not the personal property was an available asset in the hands of the administrator, Cavitt. We think the record clearly shows that the administrator, Brown, prior to his death, had parted with the possession of the personal property by delivering it to Earnest Phillips under the order of the county court; and it certainly clearly appears from the inventory of the administrator Cavitt that this personal property never came into his hands. The question,

therefore, presents itself whether creditors can be delayed in the payment of their debts to await the determination of the ownership of the personal property, which has been turned over to Earnest Phillips, or the determination of the liability of the sureties of the former administrator for wrongfully delivering said property to Earnest Phillips. As we understand the opinion of the Court of Civil Appeals, the sale of the real estate cannot be delayed on these accounts.

[7] Article 3235, Revised Statutes, provides that all property of the deceased, except that which is exempt, shall be subject to the payment of his debts, and gives to the administrator, when appointed, the right to its possession. As we have seen above, the personal estate is the primary fund for the payment of debts. This latter rule, however, is not the creature of a specific statute, but is the application of the common law. We have reached the conclusion that, under the weight of authority, and upon principle, this rule should not be interpreted to mean that the personal property belonging to the estate should be exhausted in the sense that, before resort can be had to the real estate, all of the personal assets should be reduced to possession by the administrator. We have not found that this specific question has been decided in this state.

· A case which has been often cited by text-writers is that of Clanmorris v. Bingham, 1 Molloy's Reports, 514, where the question here under consideration was directly involved. In that case the Lord Chancellor of Ireland says:

"There is a deficiency of personal assets, when there is a deficiency of immediately available personal assets to pay a creditor.

"A creditor is not to wait for payment attendant on the ultimate solvency of securities belonging to the testator—I have known that acted on 20 times. No matter how soon assets may be likely to come in, or rents to amount to the sum necessary, a creditor shall not be obliged to wait beyond the shortest reasonable time. It is sometimes said that the care which the court takes of the interest of minors will influence it in this point. But delaying creditors is no part of the court's duty for the protection of minors' interest. That is a protection the court has no right to give.

"The court has two points to consider: First, that there is a debt presently due; and, second, not to sell real estate, while there is personalty available. But this does not mean that if debts are due to the estate, the creditor is not to be satisfied until they are collected. The court will order immediate application of such funds as are immediately available, and then resort to the real estate, without waiting for the coming in of other personal effects, which may become capable of being applied within a shorter or longer period of time."

The same rule was announced in Bridge v. Swain, 3 Redf. Sur. (N. Y.) 487. In that case certain claims were listed as assets of the estate, and it was contended that these as-

sets should be exhausted before a sale of the real estate. The court, however, says:

"It seems to me that the assets had in view by the statute are not what shall be deemed assets for the purpose of the inventory, but the amount of personal property converted into money or immediately available which has actually come into the hands of the executor or administrator. The doubtful and worthless debts are to be inventoried, and are assets to be accounted for, but if not collected at the time of making such an application as this, clearly the possibility of their ultimate recovery cannot be alleged in bar of this proceeding. The courts have repeatedly held, as shown by the authorities cited by the counsel for the petitioner, that debts due to the testator, only recoverable by suits, are not assets to be charged as in his hands until the actual receipt of them by him. * * * I do not think I can compel creditors to await the doubtful issue of that litigation. They have rights to be protected, as well as heirs at law and devisees."

In the case of Blickensderfer v. Hanna, decided by the Supreme Court of Missouri (1910) 231 Mo. 93, 132 S. W. 678, the executor had delivered to a representative of one of the heirs certain funds of the estate which were sufficient to discharge the debts. The court say:

"The question is: Were the creditors compelled to sue Hanna, or the bondsmen of Jones, the executor, who had died, for this $800 before they could resort to the real estate? We think not. We think the principle was properly ruled in Van Bibber v. Julian, 81 Mo. loc. cit. 625, wherein on a like contention this court said it would not require a creditor 'to resort to a suit on the bond of the administrator, with the trouble, expense, and delay incident thereto,' before proceeding for an order for the sale of real estate. While the statute wisely requires the personal estate to be applied first to the payment of debts of the deceased, a creditor should not be relegated to an action on the bond for waste or a misappropriation for which he is in no way responsible."

In the case of the Estate of Adam Fritz, 83 N. J. Eq. 610, 91 Atl. 1017, it was held that a creditor could not be delayed in an application to sell real property belonging to the estate of the decedent merely by showing that an estate of which the creditor was executrix was a debtor of the former estate in an amount sufficient to satisfy her claim.

In American & English Ency. of Law (2d Ed.) vol. 11, pp. 1086, 1087, it is said:

"The preponderance of authority, however, seems to establish the rule that creditors are not to be defeated by the neglect or mistake of the personal representatives of the deceased debtor, but that a sale of the real estate, in case the personalty, originally sufficient for the payment of debts, has become insufficient by reason of a devastavit, will not be ordered until the creditors have exhausted their remedy against the executor or administrator and the sureties on his bond."

[8, 9] In support of the text cases are cited from Alabama, Massachusetts, North Carolina, and an early case in Missouri. As we have seen above, however, a recent case in Missouri seems to hold the contrary doctrine, at least as applied to devastavit of a former executor. It is very often the case that special statutes may furnish a reason for decisions in matters of administration, especially with regard to sales of property by administrators, and we doubt the correctness of this rule as applied to administration in this state. The administrator is not the agent of the creditors, but is an officer of the court. All the property of the deceased, not exempt, is by statute made subject to the payment of debts, and we see no ample reason why a creditor should be delayed to await the action on the bond of an administrator who has committed a devastavit any more than to require a creditor to await the determination of any other claim in favor of the estate. When an administrator dies, or is removed, the court has no further power over him, and his liability and that of his bondsmen to the estate is upon the same footing as that of any other creditor. However, the decision of this question, in our judgment, is not essential to a correct disposition of the present case. Here the question as to whether the former administrator has committed a devastavit, and whether there will be any liability upon the bond, is by no means certain, and this is a question which could not be determined by the county court under the authorities above cited. It could only be determined by suit. The district court on appeal in the present proceeding has no greater power than the county court would have originally. We do not believe that the creditors should be required to postpone the collection of their debts until this doubtful litigation should be determined by the court of last resort. The defendant in error stands in no better position in this regard than the original heirs, whose title to the land it has acquired through attachment proceedings. In resorting to this land as payment for its debt, the hardware company was charged with knowledge that the property was subject to the payment of debts of the deceased in the hands of the administrator, and that it was acquiring only such interest as its debtors had in the property subject to administration.

[10, 11] There is another ground on which we think the order of the county court for the sale of the real estate should be upheld. It is true that the inventory is not conclusive upon the heirs or administrator, upon the question of title; but the county court, in so far as the administration of the estates of decedents is concerned, is a court of general jurisdiction. It has jurisdiction to sell property for the payment of debts, and its judgment in this regard, where jurisdiction

over an estate is once acquired, is as binding as that of any other court, and not subject to collateral attack. In the proper administration of an estate it is necessary that there should be some guide by which the court can determine, for the purposes of administration, what property belongs to the estate and should come under its jurisdiction. We think that the inventory provided for by statute should, at least prima facie, be a guide for the court in this regard. Chapter 10, title 52, Revised Statutes, requires the administrator to file an inventory, appraisement, and list of claims. This is to be sworn to by the administrator and the appraisers, and must be approved by the court. The correctness of the inventory may be questioned by any one interested in the estate, and the court may of its own motion disapprove the inventory and appraisement, and appoint new appraisers. There is ample provision made for the correction of the inventory and for the requirement of additional inventories. The only limitation upon the power of the court in this regard appears to be found in article 3347, which provides that there shall only be one reappraisement. Article 3385 provides that subsequent administrators shall make and return to the court an inventory, appraisement, and list of claims of the estate within one month after being qualified, in like manner as required of original executors and administrators; and they shall also in like manner return additional inventories and list of claims.

In Clifflet v. Willis, 74 Tex. 245, 11 S. W. 1105, it was held that no land can be sold until after it has been inventoried and appraised; and it was further held that proceedings to compel an additional inventory cannot be properly included in a proceeding to compel an exhibit of the true condition of the estate, but that this should be done by requiring an additional inventory.

In Altgeld v. Bank, 98 Tex. 265, 83 S. W. 11, Judge Brown in rendering the opinion said:

"The court can regularly order the sale of property only after it has been inventoried and appraised as required by law; hence the administrator could not get an order of the court to sell property which could not be placed upon the inventory of the estate."

In Johnson v. Morris, 45 Tex. 463, it was held that the inventory is prima facie evidence of the property of the estate coming into the hands of the administrator.

[12, 13] While the particular question we are considering was not involved in the decisions above quoted from, we think the expressions of the court in these cases lead to the conclusion that the inventory is the guide to the court in determining the property of the estate in administration which should be resorted to for the payment of debts. All parties interested in the estate have the right to be heard upon the correctness of the inventory; and, while the inventory is not conclusive upon any of the parties as to title to the property, there should be some means whereby the probate court in the administration of the estate can determine upon an application for sale what property belongs to the estate and is subject to sale, without having to require the administrator to resort to some other court to determine that question. The correctness of the conclusion of the county judge upon matters arising in connection with the inventory is reviewable in like manner as other orders made in the administration of the estate. In the present case, the administrator Brown, while inventorying the personal property, apprised the court that it was claimed by Earnest Phillips. The latter at once made application to the court to have the property turned over to him; the court granted the application, and the administrator complied with it. No question was raised as to the correctness of this conclusion. We think the effect of this order was to eliminate this property from the inventory, at least until some action was taken in a court of competent jurisdiction to recover it, or its value, for the estate. But, aside from this, it is clear that at the time the district court entered its order denying the application for sale, the property was not only not in the hands of the administrator, but was not a part of the inventory. The administrator de bonis non had, in compliance with the statute, filed an inventory, appraisement, and list of claims showing all the property coming into his hands. No reference is made in said inventory to this personal property. No objection was made to this inventory. We are clearly of opinion that under this state of facts the hardware company cannot, by way of contest of an application for sale by the administrator, inject the issue of the correctness of the inventory. The statutes above referred to afford ample relief to those interested in the estate, but this relief must be exercised, in our opinion, by a direct attack upon the inventory, and not in a contest of an application to sell real estate.

We conclude that the judgments of the Court of Civil Appeals and district court should be reversed, and both causes remanded to the district court, with instructions to dismiss the injunction suit and to make such order on the application to sell the land as should have been made by the county court, sitting in probate, treating the contest as averring no sufficient grounds for refusing the application.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.