Roxanne COONS, Pro Ami, et al.,
Appellants,

v.

Stanley E. STOKES et al., Respondents.

No. KCD 26649.

Missouri Court of Appeals,
Kansas City District.

Sept. 3, 1974.

Arthur R. Kincaid, Liberty, for appellants.

Jack B. Robertson, Gary E. Lowe, Kansas City, for respondents.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Plaintiffs sued in the Circuit Court to set aside sales of their interests in two tracts of real estate, those sales having been made and confirmed by order of the Probate Court of Clay County, Missouri, in the course of the administration of the estate of their deceased father; and plaintiffs further sought partition sale of those tracts. From an adverse judgment, plaintiffs appeal.

The facts are submitted on a stipulation which incorporates pertinent documents from the records of the Probate Court. Plaintiffs' father, John T. Coons, died intestate on November 26, 1958, survived by his wife Kathryn and these children, who were all three then minors. Kathryn was appointed administratrix on January 5, 1959, and guardian of the children the next month.

The bulk of John's estate consisted of rights of inheritance in the estate of his father Floyd, administration of the latter estate being pending at the time of John's death. The inventory in John's estate showed personal property in the amount of $9,359.13, of which $6,000 was itemized as being due from the Floyd estate. The balance of assets inventoried consisted of a 1/7th interest in real estate, those being rights devised to John under Floyd's will.

In March 6, 1959, Kathryn, as administratrix, applied to the Probate Court for authority to sell the 1/7th undivided interest in each of two tracts of real estate. A separate application was filed with respect to each tract. Each application was on a printed form which contained the statement that "the sale of said real property is necessary for the best interests of the estate and for the following purposes", after which there appeared five printed lines which set forth each of the first five grounds for sale specified in § 473.460, subd. 1. (All statutory references in this opinion are to RSMo. 1969, V.A.M.S.) None of this printed material was either specially marked or deleted, so that all six grounds remained intact just as printed.

On April 27, 1959, the Probate Court entered orders authorizing the sale of the two tracts of land. These orders were on printed forms, with blank spaces to be completed by typewriter. The court in each order found pursuant to the printed portion that "the sale of said real property is necessary for the best interests of the estate."

On June 10, 1959, Kathryn filed reports that a sale had been made of one of the tracts to D. G. Paradis and Gladys Paradis for the sum of $4,857.00 and that the sale of the other tract had been made to Danny R. and Verena Stamper for $6,928.57. These reports were accepted and the sales confirmed by order of the Probate Court dated June 22, 1959. From the pleadings filed in the Circuit Court, it appears that the purchasers named received deeds not only of John's undivided ⅙th interest, but that they also purchased the balance of the interests held in the respective tracts by Floyd's other heirs.

Thereafter, on September 30, 1959, the court ordered a family allowance to the widow and children of $10,000. By that time, there were also allowed claims in the sum of $2,209.25.

On February 11, 1960, final settlement and distribution was made in the Floyd estate. That distribution was paid to Kathryn as administratrix. At some unspecified time thereafter, Kathryn disappeared and abandoned her duties as administratrix and as guardian. For that reason her appointments in those capacities were revoked, and on May 18, 1965, the Public Administrator was appointed as her successor.

On May 9, 1966, the Probate Court entered an order correcting nunc pro tunc the order to sell the tract which was ultimately purchased by Paradis. The earlier order was amended to add the following: "The Court further finds that the personal property of the estate is insufficient for the payment of its obligations and that the sale of said real estate is necessary for the payment of the claims and obligations of the estate and the costs of administration."

On April 28, 1967, the successor administrator obtained an order of the Probate Court allowing recovery against Kathryn in the sum of $28,481.09 for her breach of her obligations and providing that he have execution against her surety for $5,000, that being the amount of her bond. Final settlement and distribution was made in John's estate on July 18, 1967. The present litigation in the Circuit Court was not filed until September 2, 1969.

As their principal point on this appeal, and the only one setting forth an affirmative ground for reversal, plaintiffs challenge the Probate Court's jurisdiction to order the sales of the real estate, and in support they state that: "A sale for the best interest of the estate is not a separate statutory authorization and a petition requesting sale of real estate must include specific allegations which would allow the court to determine that the sale is for the best interest of the estate and not merely draw a conclusion 'for the best interest of the estate'." The other two points set forth in plaintiffs' brief are in the nature of anticipatory rebuttal, rather than being additional claims of reasons for reversal. Since we rule against plaintiffs on their single affirmative contention quoted above, it becomes unnecessary to consider rebuttal points two and three.

## I.

A factor of prime importance in this case is that the land in question has already been sold under court orders duly made and which have become final. These orders, though by a Probate Court, are as much entitled to respect and to all presumptions of correctness as orders of any other court. Rodewald v. Rodewald, 297 S.W.2d 536, 539 (Mo.1957); Hutchison v. Shelley, 133 Mo. 400, 34 S.W. 838, 841 (1896); Blickensderfer v. Hanna, 231 Mo. 93, 132 S.W. 678 (1910).

For that reason, these orders are immune from collateral attack of the kind made here, except on certain exceptional grounds. One of those exceptional grounds, and the only one claimed by plaintiffs as the basis for relief, is a lack of jurisdiction by the Probate Court to make these orders. Unless plaintiffs can demonstrate their allegation as to lack of

jurisdiction, their case fails. Rogers v. Johnson, 125 Mo. 202, 28 S.W. 635 (1894).

v. Stark, 116 Mo. 481, 21 S.W. 1088, 1092 (1893); Rodewald v. Rodewald, supra.

## II.

This sets the background for consideration of plaintiffs' contention that the Probate Court lacked jurisdiction because not properly invoked by adequate petitions to sell. These petitions are claimed to be insufficient for the reason that the purpose for sale stated is "the best interest of the estate." That, plaintiffs say, is a mere conclusion which should have been but was not supported by further allegations of fact.

█ Assuming without deciding that § 473.460 subd. 1(6) [1] should be construed as contended for by plaintiffs, that still does not justify a conclusion that the petitions were so defective as to deprive the Probate Court of jurisdiction. Accepting for sake of argument plaintiffs' construction that "best interests of the estate" is not a sufficient allegation of purpose for sale without further allegation of additional facts, there would have been good ground for the Probate Court to deny the petitions and there also would have been good ground for reversal of the orders for sale upon a direct appeal. However, a collateral attack cannot take the place of a direct appeal, and mere insufficiencies in these pleadings did not deprive the Probate Court of jurisdiction. Those alleged deficiencies are matters upon which that court was entitled to rule in the exercise of its general jurisdiction, and any error in that regard could be corrected only by direct appeal. Robbins v. Boulware, 190 Mo. 33, 88 S.W. 674, 676 (1905) and authorities there cited; Macey

## III.

█ There is still another answer to plaintiffs' contention. The petitions for sale were not confined to alleging only "best interests of the estate" as the purpose of sale. Additionally, the petitions alleged all of the other five purposes authorized by § 473.460. Plaintiffs do not challenge the sufficiency of the form of these allegations, nor do they point to anything negating the truth and validity of those purposes for sale. Absent such a showing by plaintiffs, they cannot prevail. Linville v. Ripley, 347 Mo. 95, 146 S.W.2d 581, 583 (Mo.1940); Hutchison v. Shelley, supra.

█ Moreover, if it were necessary to inquire into the validity of those other grounds, the record here does plainly so show. This record shows that the estate had debts of over $2,200 and a family allowance to be paid of $10,000. To cover these, and leaving out of account costs of administration, the estate had personal property of approximately $9,300.00, of which $6,000 was an indebtedness from the Floyd estate. Without payment of this debt by the Floyd estate, the John estate was helpless to pay the debts it owed and to pay for the support of the widow and three minor children at a time when they were approaching the end of the one-year period for which that allowance was intended to provide their support. The record further shows that the distribution from the Floyd estate was not actually made until February, 1960, approximately 8

---

1. The pertinent portion of § 473.460, as it stood at the time of these sales, provided:

"1. Real or personal property belonging to an estate may be sold, mortgaged, leased or exchanged under court order when necessary for any of the following purposes:

(1) For the payment of claims allowed against the estate;

(2) For the payment of any allowance made to the surviving spouse and minor children of the decedent;

(3) For the payment of any legacy given by the will of the decedent;

(4) For the payment of expenses of administration;

(5) For the payment of any gift, estate, inheritance or transfer taxes assessed upon the transfer of the estate or due from the decedent or his estate;

(6) For any other purpose in the best interests of the estate."

months after the real estate sales were confirmed. Whatever the reason was for the delay in distribution from the Floyd estate, the stark fact remains that John's widow and children needed money and that money and funds to pay debts could only be forthcoming by sale of the real estate here in question.

These facts could have been and it would have been better if they had been set forth in the petitions for sale and in the orders for sale; for the failure to do so cannot in good reason be deemed to be jurisdictional. The omission of these facts, if they were ever necessary, could be no more at worst than a mere irregularity which has now been cured by § 473.480.

## IV.

Plaintiffs cite and make heavy reliance upon McIntosh v. Connecticut General Life Insurance Co., 366 S.W.2d 409 (Mo.1963). That reliance is misplaced. Since plaintiffs give the McIntosh case such heavy emphasis and since that is substantially their sole authority, a detailed analysis of the McIntosh decision is in order.

In McIntosh, an administrator filed petition in a probate court for an order to sell real estate for the stated reasons that:

"[T]he sale of said real estate is necessary for the best interest of the estate in that the real estate is in different tracts and not contiguous and there are so many different fractional interests that the same can never be divided in kind and for that reason it is to the best interest of the estate and all of the heirs that said real estate be sold by your Administrator as provided by statute.

"Petitioner further states that it would be most advantageous to the estate that said real estate be sold under the original inventory and appraisement at private sale for cash."

After that petition was filed, one of the heirs filed suit in the circuit court to partition the same real estate. The administrator challenged the jurisdiction of the circuit court on the ground of the pendency of the probate court proceeding for the sale of the land, and the circuit court sustained the administrator's motion. On appeal, the Supreme Court reversed. The basis for this reversal was that the administrator's petition for sale in the probate court did not describe anything which "would constitute a situation in which there could be a necessity for the sale of the real estate in 'the best interests of the estate'." In reaching this decision the Supreme Court declared that the "best interests" referred to must be the best interests of the estate as a separate entity, distinct from the heirs. The Supreme Court further declared that the situation described by the administrator in McIntosh, although it might show advantages to the individual heirs, did not constitute any advantage to the estate as a separate entity and therefore did not show a good purpose for sale within the meaning of the then existing § 473.460 subd. 1(6).

Nothing in McIntosh supports plaintiffs' contention that "the best interest of the estate" cannot be a separate ground for sale independently of the other five grounds. Nor does anything in McIntosh hold the petition for sale in the probate court must spell out the detailed facts in support of any one of the six statutorily permitted purposes. Moreover, the result of the McIntosh case is clearly distinguished from the present case on each of the following bases: 1) The petition for sale filed by the administrator in the Probate Court in the McIntosh case affirmatively showed on its face that there was not a situation warranting a sale for the best interest of the estate; whereas there is no such showing in the instant case. 2) In McIntosh, no sale had ever been consummated under any order of the Probate Court; whereas the sales here were pursuant to orders to sell and reports of the sales were duly made and confirmed.

The claimed defects in the petitions for sale do not rise to such a dignity and

importance as to deprive the Probate Court of jurisdiction. The orders of sale have long since become final and are not subject to the present collateral attack. McIntosh is not to the contrary.

Affirmed.

All concur.