CATHERINE HARRISON V. HENRY OBERTHIER.

1. The probate court has the power to set aside the homestead of two hundred acres out of a larger tract owned by an estate, even before the purchase money has been paid.
2. Such order will protect the family, even against the holder of the vendor's lien, until it has been set aside in a direct proceeding for that purpose, with all parties interested before the court.
3. Upon such proceeding to enforce the vendor's lien, the proper order would be, to sell the excess of the tract over the allotted homestead, and so much of the homestead as may be necessary to pay the purchase money.
4. The statute (Paschal's Digest, Article 5771) authorizes the District Court upon motion to revise and correct the proceedings of the county court relating to estates of deceased persons.

ERROR from Rusk. Tried below before the Hon. J. B. Williamson.

This case, on the tenth of March, 1873, was dismissed for want of an error bond, under Article 1517, Paschal's Digest.

On April 16, 1873, the order of dismissal was set aside, with permission to plaintiff in error to file a cost bond by the next term.

On December 3, 1873, an error bond, approved by W. B. Harper, district clerk of Rusk county, was filed in the Supreme Court.

The cause was submitted on briefs, December 17, 1873.

The facts appear in the opinion of the court.

*W. W. Morris*, for plaintiff in error.

*Martin Casey*, for defendant in error.

REEVES, ASSOCIATE JUSTICE.—On the twenty-ninth day of January, 1866, B. F. Montgomery, as administrator *de bonis non* of the estate of John Harrison, deceased, filed a petition in the county court pertaining to estates of deceased persons for Rusk county, showing a small sum in cash in his hands and a promissory note for $740.50, and also showing the claims against the estate for a much larger sum. As part of the claims against the estate he reports two notes—one for a balance of $397.12, and the other for $105.58, given by the deceased in his lifetime to T. J. Walling, as part of the purchase money and the balance due for a tract of three hundred and seven acres of land, sold and conveyed by deed by Walling to Harrison, and on which the plaintiff, Harrison's surviving widow, then resided. He represented that the means in his hands were inadequate to pay the debts against the estate without selling the excess of the land above the homestead exemption, which excess was one hundred and seven acres, and asking the court to appoint commission- ers to set apart to the widow, the plaintiff in this suit, a homestead of two hundred acres out of the tract, and for an order to sell the one hundred and seven acres, which was done. The commissioners appointed by the court for that purpose set apart to the widow two hundred acres, including the dwelling and improvements, describing the land by metes and bounds.

The administrator was ordered to sell the surplus of one hundred and seven acres for the payment of the pro- bated claims against the estate and the expenses of ad- ministration.

In 1868 T. J. Walling filed his petition in the same

court, and asked for a decree to sell said tract of three hundred and seven acres to pay the balance of the purchase money on the land sold to Harrison, alleged to be two promissory notes—one for $768.75, due on the twenty-fifth of December, 1860, with ten per cent. interest from its date on the twenty-seventh of October, 1859, credited by $700, paid October 10, 1862 ; and the other for $70, dated and payable at the same time ; alleging the death of Harrison in November, 1862, and the refusal of his administrator to pay the notes. On. the admission of the administrator that the notes were given for the purchase money, and that the balance due and unpaid was $595, the court made an order directing the administrator to sell, for cash, the entire tract of three hundred and seven acres, to pay off and discharge Walling's debt. The sale was made accordingly in February, 1869, and defendant became the purchaser at the sum of $815. The sale was confirmed by the court, and the administrator conveyed the land to the defendant on payment of the purchase money.

On the trial, the parties read in evidence their deeds of conveyance and the orders and proceedings of the county court, under which they severally claimed. .

The court charged the jury, that the paper title introduced by plaintiff was insufficient to warrant a recovery over that introduced by defendant. There was a verdict for defendant; and the motion for a new trial being overruled, plaintiff prosecutes a writ of error from the judgment, and asks that it be reversed for the reasons stated in the motion and assignment of errors.

The principal question in the case is, did the court have authority to set aside the homestead before the purchase money was paid?

The action of the court did not discharge Walling's lien on the land for the balance of the purchase money; but the plaintiff being in possession of the whole tract

at the time the order was made, claiming, under the deed from Walling, she, could protect· her possession to.the, portion assigned to her and claim under the order and proceedings defining the. homestead until they.were set aside.· It is made the duty of·the chief justice, under the act of 1848, relating to estates of deceased persons, .to set apart to,the widow. and children all the property. exempted from. execution or forced·sale by the Constitution and laws of the:.State. (Oldham. &. White's:.Digest, Article 753.) .

The .court made its order on the application of the administrator, and set apart to the widow two hundred acres· out of the. tract of three hundred and seven acres conveyed by. Walling. to John Harrison, the husband. of plaintiff,· and. ordered the .surplus;of one hundred·and· seven acres to be sold to pay debts. The administrator· had authority to make such an application to the extent of setting apart the homestead, and the subject was within the jurisdiction of·the ;court. (Green v: Crow, Administrator, 17 Texas, 180.)

The. estate was probably regarded as solvent and able to pay the; debts against it at the ,date of the order;in 1866, and that supposition may, perhaps, account for the order directing the one hundred and seven. acres to. be sold to pay the probated claims generally, when it should. have been to pay.off and discharge Walling's lien as ·a preferred claim over the debts generally. This order was not executed, and no sale was made under it. At the time this order was made, the administrator had ·in his hands, in cash and a note reported as solvent, a sum more than. sufficient to discharge the purchase money remaining unpaid on Walling's claim; and though he reports other demands against the estate besides Walling's, it does not appear that these demands were paid, or what disposition was made of the funds in his hands. If necessary to protect the. homestead and free it from the

encumbrance, the court might have directed the administrator to apply a sufficient amount of the means of the estate for that purpose.

The amount claimed by Walling was $595. The court adjudged this sum to be the balance of the purchase money on the entire tract of three hundred and seven acres, according to agreement between Walling and the administrator, Montgomery, and ordered it to be sold, and directed the proceeds to be applied to the payment of Walling's claim, which was done by a sale to the defendant, Oberthier, who was in possession of the land as tenant of plaintiff.

The plaintiff alleges in her amended petition that she had no notice of the proceedings instituted by Walling to enforce his lien. She attempted by her amendments to put in issue the sum claimed by Walling, alleging that it was less than $595, and that it embraced the note for $70, which was no part of the purchase money, and charged fraud against Walling and Montgomery, and notice on Obertheir when he purchased. As exceptions were sustained to the amendments, the facts on which plaintiff may have relied do not appear.

The record does not show that the note for $70 was allowed by the administrator, or approved by the chief justice, nor is it copied into the record.

The claim for $768.75, with a credit for $700 paid before John Harrison died, seems to be the only debt offered in evidence on the trial, apart from the recitals contained in the proceedings.

Though it was error to sustain the exceptions to the amended petition, the plaintiff's right to recover to the extent of the homestead of two hundred acres was not affected thereby. The homestead was set apart by a court in the rightful exercise of its jurisdiction, and its judgment cannot be collaterally impeached or disregarded by the court at a subsequent term, as was attempted to be done

by the order to sell, and sale of the same land to satisfy Walling's claim.

Under the pleadings and evidence before the court and jury, the plaintiff was entitled to a verdict for the two hundred acres described as the homestead; and her right to that quantity was not defeated because she may have sued for more than she could recover.

The defendant, by his purchase at the administrator's sale, could have acquired title to no more than the surplus of one hundred and seven acres above the homestead exemption. But as he paid Walling's claim for the pur chase money, he should be subrogated to all his rights, and should be allowed to enforce the lien by a sale of so much of the land as may be necessary to pay the purchase money on Walling's sale to Harrison.

If the defendant should desire to avail himself of this remedy, and have the order assigning the homestead set aside, or if the plaintiff should desire to have the proceedings of the county court affecting her rights revived, it would be necessary to bring the proper parties before the court, that their rights might be protected. If this course should be taken, and it should be found necessary to sell the land to pay the balance of the purchase money, the surplus of one hundred and seven acres in excess of the homestead should be sold first, and the deficit, if any, should be made up by a sale of a sufficient quantity, or the whole, if necessary, of the two hundred acres, if it is not otherwise paid.

The jurisdiction of the District Court over administrators, or to revise and correct the proceedings of the county court relating to the estates of deceased persons, is supported by numerous decisions of this court. The statute also authorizes a motion for the same purpose. (Lott v. Ballaud, etc., 21 Texas, 167; Ray, Administrator, v. Parsons, 14 Texas, 370; Poag, Administrator, v. Row, 16 Texas, 590; Phelps v. Ashton, 30 Texas, 344;

Lynch v. Baxter, Administrator, 4 Texas, 443; 2 Paschal's Digest, Art. 5771.)

The cause is reversed and remanded for further proceedings, in accordance with this opinion.

REVERSED AND REMANDED.