### T. A. MINTER ET AL. v. S. B. BURNETT, ADMINISTRATOR, ET AL.

Decided December 21, 1896.

1. Estates—Liens Against Realty—How Paid.

As against the administrator and the widow of deceased (to whom his per-
sonal estate passed), the heirs of a half interest in his realty (his father, brothers
and sisters) were entitled to have liens existing against the land discharged out
of the personalty, where sufficient funds therefor were in the administrator's
hands. There is nothing in our statutes to the contrary, and this rule is in accord-
ance with Revised Statutes, article 3129, which provides that executors and ad-
ministrators shall in such case be governed by the common law. (Pp. 248 to 254.)

2. Same.

The rule requiring liens to be settled out of the personalty, applies where the
funds in question were the proceeds of decedent's interest in cattle held in the Indian
Territory at the time of his death, and sold by his surviving partner, who, after
paying the partnership debts, brought the money to Texas, and placed it in the
hands of the administrator. (Pp. 253, 254.)

QUESTION CERTIFIED from Court of Civil Appeals for Second District,
in an appeal from District Court of Wichita County.

BROWN, ASSOCIATE JUSTICE.—This case was presented to the Court
of Civil Appeals upon an agreed case, from which we make the following

extracts and statements, covering the facts necessary to the determination of the questions submitted by that court:

"1st.   Jerry J. Burnett died in Wichita County, Texas, on August 7th, 1894, intestate, and left surviving him his wife, Jesse Burnett, but left no children.   He also left surviving him his father, Jerry Burnett, and the following named brothers and sisters:   S. B. Burnett, P. H. Burnett, T. H. Burnett, Mrs. T. A. Minter and Mrs. Mollie Christol, whose husband is J. G. Christol.   That the mother of Jerry J. Burnett, deceased, was dead at the time of his death.   That Jerry Burnett, deceased, never had any child or children.

"2nd.   That on October 25th, 1894, S. B. Burnett was duly appointed administrator of said estate of Jerry J. Burnett, deceased, and duly qualified on November 8, 1894, and on December 8, 1894, filed his inventory and list of claims according to law."

The estate was solvent and was properly administered as required by law, except in the particulars complained of in this case.   The inventory returned by the administrator showed that he had on hand four tracts of land, which it is unnecessary to describe here, of the aggregate value of $5930.

"That said values are the values shown in said appraisement of said estate.   That most of the personal property of Jerry J. Burnett consisted of cattle, situated at his death in the Indian Territory, and that his personal estate situated in Texas at the time of his death is not more than sufficient to pay expenses of administration and widow's allowance and other debts not secured by lien on the real estate."

On April 22, 1895, the administrator made application to the County Court for an order to sell certain real estate for the purpose of paying the debts therein mentioned, which constituted and held vendor's liens upon the said land.   All of these claims had been presented to and allowed by the administrator and approved by the County Court as required by law. Two of the notes which held liens upon two of the tracts of land had been paid off by the administrator, he being a surety upon the said notes.   The other debt was still due to the original payees and regularly probated in their names.   These were the only debts of the estate remaining unpaid. The administrator also had on hand in addition to the lands mentioned personal property and cash to the amount of $9000, it being principally in cash.   Only $691.19 of the $9000 consists of property and of cash derived from the sale of the personal property that was situated in the State of Texas at the death of Jerry Burnett.   The remainder of the cash, $8308.91, is money derived from the sales of partnership cattle, situated in the Indian Territory at the time of the death of Jerry J. Burnett, deceased, and afterwards sold by S. B. Burnett as surviving partner of the said J. J. Burnett, deceased, and brought into the State of Texas since the death of Jerry J. Burnett.

"That at the time of the death of Jerry J. Burnett most of his personal estate consisted of a half interest in a herd of cattle in the Indian

Territory and outside the State of Texas; that S. B. Burnett owned the other half interest in said cattle, and that the said Jerry J. Burnett, deceased, and S. B. Burnett were partners in said cattle business. That after the death of said Jerry J. Burnett, and before the filing of inventory and taking out letters of administration, S. B. Burnett had sold a portion of said cattle as surviving partner, and received in payment therefor notes and cash, and brought the proceeds of said sale into the State of Texas, and rendered same in his inventory of said estate, and afterwards made a motion in Probate Court of Wichita County, where said administration of said estate was pending, to correct said inventory by leaving out said proceeds, which motion was refused by said court."

That outside of the funds in the hands of the administrator derived from the sale of the cattle in the Indian Territory there is no personal property belonging to the estate out of which he can raise the money to pay off the said debts or any part thereof. The lands are not worth more than the amount of money for which they stand incumbered by the vendor's lien. That the partnership of S. B. and Jerry J. Burnett owes no debts, all of the debts having been paid by the surviving partner out of funds derived from the sale of partnership property. That the allowances for the widow have been made except the homestead allowance and there is no land out of which the homestead can be set apart to her.

Due notice was given of the application for order of sale made by the administrator, and Mrs. Jesse M. Burnett, the surviving widow of the decedent, appeared and joined in the prayer of the administrator for the sale of the land. Jerry Burnett, father of the deceased, and T. A. Minter and Mrs. Mollie Christol, joined by her husband, appeared by their attorneys and by written answer resisted the application, alleging that there was no necessity for the sale of the land, because the application showed money enough on hand to pay all the debts without any sale of the real estate and that under the law the personal property was the primary fund out of which the debts should be paid. The application made by the administrator showed fully the condition of the estate and all of the debts due and the property and money on hand at the time.

The case was tried in the County Court, the application granted and an order made for the sale of all of the lands for the purpose of discharging the debts which held vendor's liens thereon; from that order Mrs. T. A. Minter, Jerry Burnett and Mrs. Mollie Christol, joined by her husband, appealed in due form to the District Court of Wichita County. Upon a trial de novo, had in that court, the land was ordered to be sold as prayed for; from which said judgment the said parties, T. A. Minter, Jerry Burnett, and Mrs. Mollie Christol and husband appealed to the Court of Civil Appeals, which court has certified to this court the following questions:

"1. Did the application of the administrator for the sale of the land and the proof show any necessity for the sale?

"2. Are the father and brothers and sisters of the deceased, Jerry J. Burnett, under the facts shown in the agreed statement, entitled, as be-

tween themselves and the administrator and the widow, who inherited the personalty, to have the purchase money for the land paid out of the money and personalty in the hands of the administrator, and to thus have their one-half interest in the land freed of any incumbrance; or, in other words, should the personal property belonging to the estate of Jerry Burnett be used in discharging the debts which are a lien for the purchase of the real estate, allowing the heirs other than the widow to receive one-half of the land freed from the incumbrance?"

In this State all property belonging to the estate of a deceased person which is not exempt from forced sale by law is liable in the hands of the executor or administrator to the payment of debts, and creditors are not interested in the question as to what fund is primarily liable therefor, except in cases of insolvent estates, in which event there might arise a question as to the enforcement of the lien upon specific property before admitting debts secured thereby to participate in the general fund. The question as to what property is first liable to the payment of debts against the estate of a deceased person usually arises between the persons who take such estate by descent or by will from the decedent. Under our law of descent and distribution this question will rarely arise, because both real and personal property descend alike to all the heirs, but in case of disposition of the property by will the question may often be of importance.

As between those persons who take the estate of the deceased by descent or by will, if there is nothing to indicate a different intention on the part of the deceased, the personal property belonging to the estate constitutes the primary fund for the payment of debts under the rules of the common law. (Arnold v. Dean, 61 Texas, 253; Hull v. Hull, 3 Rich. Ch. (S. C.) 85; Tower v. Lord Rous, 18 Ves. Jr. 131.) There is no conflict in the authorities upon this proposition and it is unnecessary to discuss it or add authorities to the few here named.

There is considerable conflict among the English cases as to what will render the purchaser from, or heir or devisee of, the mortgagor personally liable for the debt secured by a mortgage or other lien upon the land purchased inherited or received by devise. But there is no conflict in the authorities upon the following propositions:

(1). If the deceased was not liable personally to the mortgagee or other lienholder for the debt secured upon the land, then the personal property cannot be applied to its satisfaction; he holds the land subject to the lien, but is not liable himself nor is his estate other than the land liable for the debt. Duke of Cumberland v. Cordington, 3 Johns., Ch. 228; Billinghurst v. Walker, 2 Brown Ch. 473 (*608); Tweddell v. Tweddell, 2 Brown Ch. 126 (*152); Barry v. Harding, 1 Jones & LaT., Ch. 475.

(2). If a person dies and leaves land which is incumbered for debt contracted by the decedent, whether it be the purchase money of the land or borrowed money, secured by a mortgage, or if the decedent purchased land upon which there was then an incumbrance existing, and assumes to pay the debt in such manner as to render himself liable to suit by the

creditor, then at common law, as between those who may take the personal property and those taking the real estate, the personal property would be liable as the primary fund to discharge the debt so secured, and the heir or devisee who received the land from the deceased would have the right to insist upon the application of the personal property to its payment, or, if he had discharged the debt, would be entitled to be reimbursed for the amount so expended out of the personal property belonging to the estate. Johnson v. Corbett, 11 Paige Ch. 265; Cogswell v. Cogswell, 2 Edwards Ch. (N. Y.) 238; Hood v. Hood, 26 L. J. Eq. (New Series) 616; Oxford v. Rodney, 14 Ves. Jr., 417; Broome v. Monck, 10 Ves. Jr., 612; Woods v. Huntingford, 3 Ves. Jr., 128; Gould v. Winthrop, 5 R. I., 319; Dandridge v. Minge, 4 Rand. (Va.) 397.

It is not intended to include in the last proposition cases in which a contrary intention appears either from the contract or from the will under which the devisee claims, and, indeed, whenever such intention is established by lawful evidence. In fact, the general rule stated has a great number of exceptions which we do not deem it necessary to notice here.

Appellees insist that the paramount title to the land in question was in the vendors and that the deceased had nothing but an equity which does not entitle the appellants to have the lien discharged from the personal estate. The rule at common law is that when the contract of purchase is such that the vendee could be compelled to take the land, upon his decease that right descends to the heir, who can require the administrator to pay the purchase money, and perfect the title. Broome v. Monck, 10 Ves. Jr., 612.

It is the settled law of this State that, as between the vendor and vendee, an express reservation of the vendor's lien has the effect to reserve to the vendor the superior title to the land. This is however only for the purpose of enforcing the collection of the purchase money and has no application as between the vendee and third persons. The vendee's title is subject to execution, may be sold by him, and will descend to his heirs. Stephens v. Motl, 82 Texas, 81; Baker v. Clepper, 26 Texas, 629.

Article 1689 reads as follows: "Where any person having title to any estate of inheritance, real, personal, or mixed, shall die intestate as to such estate, and shall leave a surviving husband, or wife, the estate of such intestate shall descend and pass as follows: * * * * * * * * *. If the deceased have no child or children, nor their descendants, then the living husband or wife shall be entitled to all of the personal estate, and to one-half of the lands of the intestate, without remainder to any person, and the other half shall pass and be inherited according to the rules of descent and distribution." Considering the estate in question as the separate property of the deceased husband, the surviving widow would, under this statute, take all of the personal property subject to the right of the heirs who share the real estate with her to have the incumbrance upon the land discharged by the personal property, if the common law governs in the decision of the question. (Sutherland v. Harrison, 86 Ill., 363.) The

case just cited involved the identical question presented here under a statute practically the same as ours. But appellees insist that the money in the hands of the administrator is not subject to be appropriated to the discharge of the lien on the land, for the following reasons:

First: Because under our statutes all property descends to the heirs. subject to the payment of debts, and the common law is not in force in this State so far as it affects this question, because its rules are inconsistent with our statute law on the subject.

Second: Because if the common law be in force, the money sought to be applied was derived from the sale of personal property situated in the Indian Territory at the death of the intestate, and is not subject to be appropriated to discharge the lien upon this land.

The cases of Mullins v. Yarborough, 44 Texas, 14, and Arnold v. Dean, 61 Texas, 249, bear upon the question under discussion. The former case involved the right of the administrator to apply personal property in his hands to the discharge of a lien upon the homestead which had been set apart to the widow and minor children, and the court held that the homestead was no part of the estate being administered by the administrator, and whatever right the children and widow might have had to have the incumbrance discharged by the administrator under order of the court, the administrator had no authority to do so except under the direction of the court. The right of those who received the homestead from the estate to have the lien discharged out of the personal property was not decided in that case.

In the case of Arnold v. Dean, it was sought to have certain special legacies satisfied out of land belonging to the estate, there being sufficient personal property to pay the debts and the legacies; this court held that the personal property was the primary fund for the payment of debts and legacies. The same rules at common law apply to both debts and legacies, therefore the decision in that case is authoritative upon the point now under discussion. In neither of the cases cited, however, did the court consider the effect of our statutes upon the question as to whether the common law was in force in this State in reference to the matter under litigation.

We will briefly examine the statutes of this State which it is claimed have the effect to displace the common law in so far as they bear upon this question.

On the 5th of February, 1840, the Congress of the Republic enacted a law concerning the administration of estates which contained the following provision: "Every executor or administrator is bound, within three months after his appointment, to petition the court of probate granting letters testamentary or of administration for the sale of all the perishable property belonging to the succession and all of such portion of the other personal property, except slaves, as may be shown to the court to be necessary for the payment of debts against said estate; and in case, or if on further information, he finds that the proceeds of the sale of the personal property will not be sufficient for the payment of the said.

debts, he shall then, within six months after his appointment, or as soon
as he ascertains the said deficiency, petition the Probate Court for the
sale of the slaves and real estate of the decedent, or so much thereof as
may be necessary for the payment of the said debts."

On March 20, 1848, the Legislature of the State of Texas enacted a
general law regulating the subject of administration of estates, embodying
the following provisions: "All sales for the payment of the debts owing by
the estate shall be ordered to be made of such property as may be deemed
most advantageous to such estate to be sold: provided, however, that no
order shall be made to sell the slaves belonging to an estate for the pur-
pose aforesaid, until all other property subject to the payment of debts
has been first sold and it shall be shown to the court that the proceeds of
such sale are insufficient to pay such debts." It will be seen that the
Legislature maintained the policy, first, of preserving for the heirs the
slaves and land, and afterwards of preserving the slaves in contradistinc-
tion to all other property. In 1863 the section last quoted was amended
by the enactment of the following provision: "All sales for the pay-
ment of the debts owing by the estate shall be ordered to be made of such
property as may be deemed most advantageous to such estate to be sold."
The language last quoted is now the law as embodied in the Revised Stat-
utes article 2112.

Article 2117 of the Revised Statutes directs the sale of all perishable
property belonging to the estate; and article 2119 provides for the sale
of all personal property, except "such bonds, securities or other personal
property as may, in the opinion of the county judge, be of a character not
liable to waste or loss," as well as property exempt from forced sale, spe-
cific legacies, etc. Article 2121 Revised Statutes authorizes any creditor of
deceased person, holding a claim secured by mortgage or other lien, which
has been allowed and approved or established by suit, to apply to the
County Court where the administration is pending for an order to the
administrator to sell the property upon which he has such mortgage or
other lien to satisfy such claim. Article 2122 makes it the duty of the
executor or administrator, so soon as he shall ascertain that it is necessary,
to apply to the county judge for an order to sell so much of the real
estate belonging to the estate he represents as he shall think to be suf-
ficient to pay the local charges and claims against the estate. The word
"local" used here is evidently a typographical error, and we think must
mean legal—that is, the charges in the way of court costs as well as the
debts due from the estate.

In 1840 the Congress of the Republic enacted the following statute:
"The common law of England (so far as it is not inconsistent with the
Constitution and laws of this State) shall, together with such Constitu-
tion and laws, be the rule of decision, and shall continue in force until
altered or repealed by the Legislature." And in 1876 the Legislature
of this State enacted a general law to regulate proceedings in the County
Courts pertaining to the estates of deceased persons, of which section 141
reads as follows: "The rights, powers and duties of executors and ad-

ministrators shall be governed by the principles of the common law when the same do not conflict with any of the provisions of the statutes of this State;" which was embodied in the Revised Statutes of 1879 in the following words:  "The rights, powers and duties of executors and administrators shall be governed by the common law, when not otherwise provided by statute."  This was the form of the statute in force at the time the rights of the parties accrued in this case.

If it had been intended that a mere inconsistency with the general plan and scheme of the Statutes of this State with regard to the administration of decedents' estates should displace the common law, then there was no necessity for the enactment of the law of 1876.  We therefore conclude that it was the intention of the Legislature in the enactment of that law, as embodied in the Revised Statutes of 1879, article 3129, to make the common law the rule for the government of administrators and executors, unless there be some rule to the contrary established by the Statutes of the State.  We find nothing in the Statutes of this State which provides a different rule in relation to the relative rights of parties who under the circumstances of this case receive the estate of the deceased either, by will or inheritance.  The statute which made the personal property liable for the payment of debts before the land could be sold was consistent with the common law on that question, and when the law was so changed as to leave the matter within the discretion of the court to order the sale of such property as might be deemed for the best interests of the estate, it did not affect the relative rights of heirs, devisees or legatees, but only had relation to the enforcement of the rights of creditors as against the property of such estate.  Indeed, all of the provisions of the statute which we have quoted refer only to the manner in which the claims of creditors and the charges against an estate shall be satisfied.  No statute in this State provides a rule upon the subject now under discussion different from the common law, and it follows that the common law rules are to be applied by this court in the decision of the question.

We think that the Legislature intended by the enactment of the law of 1876 to make plain and definite rules to govern administrators and executors in the discharge of their duties, because it is not unfrequently the case that they must perform those duties without having the instruction of the court with reference thereto.  The statute provides, that a person in this State may by his will withdraw his estate from the control of the County Court and place it under the control of his executor, either with or without specific directions.  If there be no such specific directions in such case, then the executor must discharge his duties under the law of the State upon his own judgment, and is empowered to do whatever the court could authorize him to do if he were subject to its control.  It therefore becomes important that persons charged with such trusts should not be in doubt as to what rules of law apply to them in the performance of their duties.  If they had to determine whether the rules of the common law were inconsistent with the laws and Constitution of the State, there would be committed to them for decision a

question which often puzzles the highest courts of the State. If, however, they are to be governed by the rules of the common law, when not otherwise provided by statute, they have a definite direction by which they can determine as to whether the common law or a statute is in force.

We conclude therefore that the rules of the common law are in force in this State as to the rights of the parties involved in the statement presented in connection with the question submitted.

In support of their contention that the money arising from the sale of the cattle situated in the Indian Territory at the death of the intestate Burnett cannot be applied to the payment of the debt secured upon the land, counsel for appellees cite 2 Washburn on Real Property 207, Haven v. Foster, 9 Pick., III., and Varner v. Bevil, 17 Ala., 286. Mr. Washburn in his work on Real Property makes this statement: "Nor can an executor or administrator be compelled to apply personal assets found in one State to relieve real estate situated in another jurisdiction." In support of this text, Haven v. Foster, supra, is alone cited. In that case the administrator was called upon to reimburse the heir who had discharged an incumbrance upon land situated in the State of New York. The intestate was a citizen of and domiciled in the State of Massachusetts at the time of his death and the administration was conducted in that State. The court held that the administrator in the State of Massachusetts was not required to go into the State of New York and discharge an incumbrance upon real estate there situated.

In the case of Varner v. Bevil, cited above, the testator was at the time of his death domiciled and actually residing in the State of Mississippi, and died there, leaving negroes as a part of his estate. The executor removed the negroes to the State of Alabama, and sought to probate the will in that State, where the testator also owned real estate. The Supreme Court of Alabama held that the executor could not deprive the courts of Mississippi of jurisdiction over the property situated in that State at the time of the testator's death and that the court of Alabama had no jurisdiction so far as the negroes were concerned. The authorities cited are not in point upon the question here presented.

In this case the surviving partner of the deceased sold the cattle which were in the Indian Territory and out of the proceeds discharged all of the partnership debts. The balance of the money thus derived was held by him and brought into Texas as the surviving partner of the deceased. The money was therefore lawfully in Texas and the administrator in this State was entitled to the possession of it after the payment of the partnership debts.

The general rule is, that the rights of the heirs in personal property are fixed by the law of the domicil of the deceased. (Rorer, Inter-State Law, 196). Although the property was situated beyond the limits of this State at the time of the death of Burnett, the surviving wife, father, brothers, and sisters took the estate according to the laws of the State of Texas, and there is no reason why this money should not be applied in the discharge of debts, when once lawfully under the control and jurisdic-

tion of the courts of this State, the same as if it had been in this State at the time of the intestate's death. It appears from the statement of facts that there are no debts due to any citizens of the Indian Territory, nor are there any persons within that territory interested in the distribution of the estate. We think that the money in the hands of the administrator, derived from sale of property beyond the limits of the State, is not to be distinguished in respect to this matter from that derived from the sale of any other personal property.

We therefore answer that the application for the sale of the land, under the facts of this case, did not show a necessity for such sale, and that the father, brothers, and sisters of the deceased Jerry J. Burnett are entitled as between themselves, the administrator, and the widow, to have the purchase money for the land paid out of the funds in the hands of the administrator derived from the sale of personal property.