**KERENS NAT. BANK et al. v. STOCKTON et al.  (No. 6913.) \***

(Court of Civil Appeals of Texas. Austin. Jan. 27, 1926. Rehearing Denied Feb. 24, 1926.)

**1. Appeal and error ⚖⇒1173(2).**

Judgment of trial court will be affirmed as to all interveners not appealing.

**2. Judgment ⚖⇒707—Judgment declaring no debts to be binding on estate held an adjudication of unsecured claims not binding on creditor not a party thereto in so far as it bars establishment of statutory lien on estate.**

A judgment in executor's suit seeking construction of will, declaring that there are no debts against insolvent estate which are binding and collectible, except first-class debts and secured claims, no barrier to establishment of statutory liens on property of estate by creditors not party to such suit.

**3. Homestead ⚖⇒84, 136—Husband, after death of first wife, may establish homestead on interest in community property after moving thereon, of which he cannot deprive widow and minor children by will (Rev. St. 1911, art. 3786; Const. art. 16, § 51).**

Where husband and minor children moved on community property after interest of children attached by death of their mother, the husband could establish a homestead on his undivided one-half interest in community property, and could extend it to other land owned by him up to 200 acres, which would remain a homestead after his death for use of his widow and minor children, of which they could not be deprived by will in view of Rev. St. 1911, art. 3786; Const. art. 16, § 51.

**4. Wills ⚖⇒781—Devise of community property, with provision that nonconsenting child shall be entitled only to inherit from deceased mother, held to require devisees to elect to take under will or by inheritance.**

Will devising community property of testator and deceased wife to children, and providing that any child not consenting to will shall be entitled only to inheritance from deceased mother, *held* to show intention to treat entire land as testator's own, and to put children to election to take under will or by inheritance.

**5. Wills ⚖⇒800—On election of children to take under will devising community property as belonging solely to testator, interest of children in community property must be considered as belonging to testator as of date of death.**

Where will devised community property of testator and deceased wife as sole property of testator, and provided that any child not consenting to will shall take only inheritance from deceased mother, on election of children to take under will, the one-half interest of children in community property became wholly the property of testator as of date of his death.

**6. Wills ⚖⇒786—Election by minors required to elect under will must result for their benefit.**

Under doctrine of election in cases where parties required to elect are minors, election must in some way result for their benefit.

**7. Wills ⚖⇒800—Homestead of testator held to extend to community interest of deceased wife on election by children to take under will treating property as belonging entirely to testator.**

Where husband moved on 275 acres of community tract with minor children after death of wife, developing entire tract, including an additional 20 acres, on election by children to take under will, treating entire property as belonging to husband, the homestead of husband should extend to full 200 acres of 295 acres owned by testator at time of death, and excess of 95 acres should be first sold to discharge liens on land.

**8. Husband and wife ⚖⇒273(4).**

Husband, paying community debts after death of wife, may reimburse himself out of community property.

**9. Executors and administrators ⚖⇒272—Lands should not be subject to unsecured claims against estate, unless surplus would exist from their sale after discharging liens.**

Where rights of an unsecured creditor of an insolvent estate are contingent on existence of a surplus in sale of nonexempt land, after discharging purchase-money liens, if no surplus will result land will not be subjected to claim, but unsecured creditors may be permitted to pay off liens and take over land.

**10. Wills ⚖⇒787—Will held not to make insurance, payable to testator's children, payable to his estate, nor to require guardian to use insurance to pay off debts.**

Under will requiring testator's life insurance payable to his children to be controlled by guardian in trust, with power to pay any liens or debts against property passing to children, and providing that estate is to be administered independently of probate court, decree holding that insurance money did not become part of estate, and that guardian could pay secured debts at his election, but that court could not compel guardian to exercise election,

was correct despite statement in will that guardian could use funds as fully as though insurance was payable to estate.

**11. Wills  787—Executor cannot · be compelled to elect under will, where not subject to the probate court.**

Where estate is administered under terms of will independently of probate court, court has no power to compel executor or trustee to exercise an election provided for in will.

**· 12. Executors and administrators  271—Insurance payable to children both by policies and by will held not charged with payment of testator's debts.**

Where testator clearly indicated that insurance payable to his children was to be considered part of his estate only on refusal of children to take under will or to bring insurance into trust fund, fact that will provided generally for payment of testator's debts, and that realty might be sold to pay debts, does not charge the insurance money with his debts.

**13. Wills  443.**

Specific provision of a will controls one of a more general nature.

**14. Wills  641—Conditions may be attached to insurance policies and beneficiaries changed by will, if not inconsistent with policies.**

A testator may attach by will any conditions or limitations to his insurance policies not inconsistent with policies, even to extent of changing beneficiaries.

Appeal from District Court, Navarro County.

Suit by the Kerens National Bank against W. T. Stockton, individually and as independent executor of the estate of L. M. Morris, deceased, to recover balance due on notes, and to foreclose a creditor's lien, with suit between same parties to cancel and set aside judgment, in which Etta Morris and others were made parties defendant, and certain creditors were made interveners. Judgment for plaintiff in first suit. From a judgment for defendants in second suit, plaintiff and interveners Daniel-Price & Co. and others appeal. Affirmed in part, and in part reversed and remanded, with instructions.

Richard Mays, of Corsicana, for appellants.
Callicutt & Johnson, of Corsicana, for appellee W. T. Stockton.
Upchurch & Howell, of Corsicana, for appellees First Natl. Bank of Kerens and First State Bank of Kerens.
Prince & Taylor, of Corsicana, for minor appellees, children of L. M. Morris, deceased.

BLAIR, J. The Kerens National Bank, hereinafter designated appellant bank, sued W. T. Stockton, individually, and as independent executor of the estate of L. M. Morris, deceased, to recover a balance of an indebtedness of $2,604.65 alleged to be due on a note or notes originally executed by Morris during his lifetime, and afterwards renewed by his said executor, and to foreclose an alleged creditor's lien on the property comprising Morris' estate. Appellant bank also sued to cancel and set aside a certain judgment rendered by the district court of Navarro county, Tex., on August 10, 1921, in cause No. 11438, styled W. T. Stockton, Independent Executor, v. Etta Morris et al., alleging, among other things, that said judgment, without appellant bank being a party to the suit, undertook to, and did, adjudge that it and other unsecured creditors, except those holding claims of the first class, were not entitled to be paid out of any property in the hands of the said executor of Morris' estate, wherefore the judgment was void or at least voidable in so far as it operates as a barrier to the enforcement of its debt and lien upon the property constituting the estate of Morris.

Etta Morris, the widow of Morris by a second marriage, and his six children by his first wife, Rosetta P. Morris, deceased, all of whom were parties to the judgment sought to be vacated, were made parties defendant to this suit. The executors and these defendants filed similar answers, insisting upon the validity of the judgment attacked, and that there was no property comprising the estate of Morris out of which appellant bank's debt could be paid.

Either upon the suggestion of the executor or of their own accord, all other judgment creditors or claim creditors, whose debts were not barred by limitation, were made parties intervener. These interveners joined appellant bank in its attack upon the judgment mentioned, and sought to have their judgments or claims established as liens upon the property of Morris.

The debts of appellant bank and of all interveners had been theretofore approved by the executor or reduced to judgments, and were not contested in this proceeding. The trial court peremptorily instructed a verdict for appellant bank for $2,382.38, with interest against the executor of Morris' estate. No other intervener asked for, or obtained, a judgment against the executor of Morris' estate in this proceeding. Three of the interveners had in separate proceedings already obtained judgments against the said executor. The trial court further instructed and decreed that appellant bank and all interveners take nothing by their suit to set aside and vacate the judgment, and that none of them had a lien upon any property comprising the estate of Morris. From this judgment only appellant bank, interveners Daniel-Price & Co., J. B. Reese Lumber Company, and J. W. Mabry & Co. have appealed. Each of these interveners had obtained their judgments prior to this proceeding.

[1] In view of this state of the record, we

affirm the judgment of the trial court as to all interveners not appealing.

The questions raised on this appeal may be better understood by first stating the history of the property involved, and of the various facts, transactions, and court proceedings relating thereto. The findings of fact upon which the judgment sought to be vacated was rendered, and the facts adduced on the trial of this proceeding, are the same, undisputed, and relate to the estate of L. M. Morris, his will, and to the property sought to be controlled and disposed of by it.

December 10, 1913, subsequent to Morris' marriage with his first wife, Rosetta P. Morris, he purchased 275 acres of land in Navarro county, executing notes in the sum of $12,000, secured by a lien thereon, in part payment, which notes and interest aggregating about $12,550 remained unpaid at the time of his death. His wife, Rosetta P. Morris, died November 7, 1915, leaving her husband and their six minor children. She died intestate, and Morris qualified as administrator of her estate April 16, 1916, which estate consisted of her community interest in the 275-acre tract and 12 or 15 lots with some improvements in the town of Kerens, Navarro county, Tex., and on some of which the family resided at the time of her death. The family never lived on the 275-acre tract, though they were making preparations to move there at the time of her death. In the early spring of 1916, Morris, with his six minor children, moved on the 275-acre tract, and shortly thereafter he sold the town property through the probate court, and paid community debts with the proceeds. After that he closed the administration, leaving some community debts unpaid.

July 22, 1918, while a widower, he purchased a 20-acre tract of land situated about one mile from the 275-acre tract, executing notes secured by a lien thereon in part payment, of which indebtedness there remained unpaid $900 at the time of his death. Thereafter he used and cultivated the 20 acres along with the 275 acres, either by himself or through tenants. Both tracts were practically all in cultivation.

April 13, 1919, he married his second wife, Etta Morris, by whom he had no children. She made her home with the husband and five minor children on the 275-acre tract; one daughter of Morris having married, and lived for a part of the remaining lifetime of Morris on the 20-acre tract, which her husband cultivated for a share of the crops.

November 20, 1920, Morris died, leaving a will which he had executed January 3, 1916, and by the first paragraph directed his manner of burial; the second paragraph directed that his just debts be paid; the third paragraph, subject to the limitations thereinafter made, devised and bequeathed all his property, real and personal, share and share alike, in fee simple forever to his six children, naming them, and giving the birth date of each. Whatever the limitations are may be found in paragraphs 4 to 10, both inclusive, which read:

"It is my will that my estate be not partitioned among my said children before the youngest one of my then living children shall be twenty-five years old. Three years after the marriage of either of them, as to such child, it shall be deemed for the purpose of this section of my will, as being twenty-five years old.

"My property on this date, subject to section six hereof, is community property of myself and deceased wife, Rosetta P. Morris, but it is my desire that all said community property be held under the terms of this my will as wholly mine, and should any one or more of my children or grandchildren, taking under this will, not agree to and abide by the terms of this my will, then my executor hereinafter named shall deliver to such devisee or devisees the part of the estate such non-consenting party or parties would have inherited from the said Rosetta P. Morris only and no part of my estate or life insurance shall pass to such party or parties not consenting to the terms of this my will.

"My life insurance is payable to my said children (or their guardian) and is to be subject to the control of the guardian I hereinafter appoint for them. I here give such guardian full authority to collect said insurance and to keep the same together as stated under section five hereof, and also to use the same in paying any lien or debt against any property passing to said children by this will. He shall have full power to loan the same on first mortgage on real estate, not exceeding in amount fifty per cent. of the value of such real estate; to purchase land with the same; to collect such money so loaned; to sell said land so purchased, and to reinvest such money from time to time in like manner as he shall see fit. Any other funds he may have on hand belonging to them are also to be held and controlled by this section of my will.

"He shall have the right to pay for legal services necessary, in his opinion, to guide him in his acts as guardian or as executor. At his election, he may use said funds in any lawful manner, as executor of my estate, after they are collected, as fully as though such insurance was payable to my estate, instead of to my said children.

"My executor shall have power to sell any land necessary, in his judgment, to best conserve my estate for my said children, or to pay my debts, and to reinvest the proceeds thereof as stated in section six hereof and under the conditions therein imposed.

"It is my will that the guardian of my said children give my said children an education suitable to their status and condition, in so far as he may be able, out of my estate, and for such purpose shall have the right to use the interest and corpus of my estate.

"I hereby appoint my friend, W. T. Stockton, to act as guardian of my said children, during their minority, and having full confidence in him, I direct that he act independent of the probate court, and that no bond or other security be required of him as such guardian. When my money is collected by him for them as guardian, he may then, at his election, pay it

to my said executor and thereafter handle it as such.

"I nominate and appoint my said friend, W. T. Stockton, to be executor of this my will, and direct that no security or bond be required of him as executor."

The eleventh paragraph provides that the estate should be administered under the will independently of any action by the county probate court other than filing and probating the will, and returning an inventory appraisement, and list of claims.

January 4, 1921, Stockton probated the will, qualified as independent executor, and returned an inventory and appraisement of the property of Morris, which consisted of an undivided one-half interest in the above-mentioned 275-acre tract and the 20-acre tract, as his separate property, charged with the purchase-money notes heretofore stated, and one note for $3,526.25 as the community property of Morris and his second wife. The debts or claims were not listed, but are shown in this proceeding to have amounted to $18,000 or $20,000 of unsecured debts in addition to the purchase-money notes above mentioned. A small amount of property belonging to the last community was shown. All except about $3,000 of the unsecured debts were community debts of Morris and his second wife. Morris had some four or five insurance policies on his life, each of which was made payable to his six children, naming them. Stockton made mention of this insurance in the inventory; but did not consider it as a part of Morris' estate, stating that he made mention of it out of an abundance of precaution as being in some way bound up by the will.

January 4, 1921, Stockton was appointed guardian of Morris' five minor children in a separate proceeding in the county court of Navarro county, and gave bond and qualified January 6, 1921. He listed these insurance policies as a part of their estate, and collected the insurance as their guardian under this proceeding.

Shortly after these proceedings Stockton instituted in the district court of Navarro county the suit in which the judgment here attacked was rendered. He brought the suit individually, as executor or trustee (if that be the position he occupied under the terms of the will), and as guardian of Morris' minor children, against the widow and the six children of Morris, joining pro forma the husband of the married daughter. Because of the peculiar position he occupied under the will, he requested the court to appoint a guardian ad litem to represent the minors, which was done. By the suit he sought a construction of the will in its entirety, and in all its details, and as to his position and duties under it; as to the rights and duties of the devisees and legatees; as to the homestead rights of the widow and minor children, independently of the will, and on which prop-erty should it be fixed; as to whether the will required the children to elect to take under it, and, if so, the court alone could elect for the minors. He also set forth the claims and debts against Morris' estate, and prayed instruction as to their payment. Many other matters not necessary to mention here were sought to be, and were, adjudicated in that proceeding.

The widow, the married daughter, and the minors by their guardian ad litem answered, making various claims as to the construction to be placed upon the will, none of which are necessary to mention, because the record shows on its face that the judgment was an agreed judgment and entered in consideration of and with the understanding that all debts, other than those excepted, would be held by the court to be uncollectible out of any property comprising the estate of Morris. The judgment and record also show on their face that the election to take under the will was made with the same understanding as to debts.

The parties to the judgment attack are not complaining about it, but are insisting upon its validity. It is shown to have been entered on August 10, 1921. Thereafter, September 2, 1921, Mrs. Etta Morris, the widow, in consideration of the sum of $3,100 paid her, conveyed by deed all her right, title, and interest in and to all property comprising the estate of Morris, including her homestead interest, to W. T. Stockton, trustee for Morris' six children. As between them the judgment will not be disturbed nor discussed.

In the following language the judgment disposed of all debts owing by Morris:

"That the estate of L. M. Morris, deceased, is insolvent, and that there are no debts against said estate which are binding or collectible (except the first class claims and costs herein as found above) save and except the debts secured by lien on property belonging to said estate, and said W. T. Stockton is without power and shall not pay any debts against said estate except debts secured by liens at the death of L. M. Morris (and said first class debts and cost herein) and shall pay each only to the extent of its security."

The portion of the judgment finding Morris' estate insolvent is correct, for the undisputed testimony established this beyond dispute.

[2] The appellants were not parties to that suit. The first-class claims referred to were funeral expenses and those of last sickness. The secured debts referred to were the purchase-money notes given in part payment of the two tracts of land. We think it without question that appellants' debts were adjudicated in that judgment by the language, "and that there are no debts against said estate which are binding and collectible," because Stockton had asked for instruction as to the payment of all debts as well as out of what fund or property they should be paid. Since

appellants were not parties to that suit, the judgment is at least voidable as to them in so far as it may operate ·as a barrier to the establishment in this proceeding of their debts as liens upon any property comprising the estate of Morris, which in law may be subjected to the payment of their class of debt. So the inquiry here should be limited to an examination of the undisputed facts, the will and the judgment construing it, to ascertain if any property comprising the estate of Morris has been disposed of by the judgment or otherwise, against which a statutory lien exists securing the debts of appellants. Beyond such an inquiry appellants have no interest whatsoever in the judgment nor in the disposition it made of Morris' estate ·amongst those entitled to it. That being true, appellants' other propositions attacking the validity of the judgment become immaterial, and are hereby overruled without discussion.

Appellants present many propositions relating to their right to subject certain property to the payment of their debts, but they necessarily confine themselves to an inquiry to ascertain if there is any real estate comprising the estate of Morris, whether his by purchase or his by reason of the children's election to take under the terms of the will, and not impressed as a homestead for the use of the widow and children, that may be subjected to the payment of appellants' unsecured debts; and to further ascertain if the insurance money on Morris' life became, after his children's election to take under the terms of the will, a part of his estate, or bound in any manner for the payment of appellants' unsecured debts.

With reference to the homestead, the trial court made the following findings of fact and conclusions of law based thereon:

"That an undivided one-half interest in the 275-acre tract of land on the Wm. F. Henderson survey was his (L. M. Morris') separate property; * * * that the 20-acre tract of land on the John Shed survey belonged to said L. M. Morris at his death, and was his separate property; that deceased, his wife, and minor children, at the date of his death, lived on the 275-acre tract of land; that the title to all of the property of said L. M. Morris, said insurance money, and all of the property of the six children, which formerly belonged to their mother, is vested in said trustee, and is to be handled by him as such trustee, and not as guardian; that said W. T. Stockton, trustee, shall carry out all the provisions of said will in their entirety; and that the terms of said will cannot defeat the claim of said widow and minor children of their homestead rights, nor to their statutory allowances and exemptions."

"(2) That the widow and unmarried children are to share jointly according to law in such cases, provided the homestead interest in and to an undivided one-half interest in said 275-acres of land and said 20 acres of land."

"It is therefore ordered, adjudged, and decreed by the court that the defendants, the widow, Etta Morris, and minor children of L. M. Morris, deceased, have, and they are hereby given, and have set aside to them for their use and benefit * * * as a homestead, 157½ acres of said land, to wit, the said 20-acre tract, and an undivided one-half interest in and to 275-acre tract to be used and shared by them as their homestead as provided by law in such case, so long as same is so used and occupied by them, as required by law to hold a homestead acquired by inheritance, as in this instance."

The gist of all appellants' propositions attacking this portion of the judgment is that it undertakes to, and does, shift Morris' homestead to other lands not so embraced or used during his lifetime, which they contend results in their being deprived of the right to subject the lands in excess of the homestead to which the widow and minors are entitled, under the law, to the payment of their unsecured debts. These propositions are erroneously based upon the claim by appellants that Morris and his first wife, Rosetta P. Morris, deceased, acquired a homestead in 200 acres of the 275-acre tract prior to her death, it being contended that the claim to a homestead by the second wife, Etta Morris, could only extend to 100 acres of the 200 acres so fixed as a homestead upon the community property of Morris and his first wife, and it being further contended that, since Morris' homestead was so impressed or fixed upon the 200 acres out of the 275-acre tract before he purchased the 20-acre tract, the homestead could not be extended under that state of facts so as to include the 20-acre tract. These contentions are not sustained by the facts.

[3] The trial court's judgment necessarily finds that Morris and his first wife never established a homestead on the 275-acre tract. The facts are undisputed that they never lived on it; but lived in the town of Kerens, on property owned by them. It is undisputed that Morris with his minor children moved there after the children's interest had attached by reason of the death of their mother. Under such a state of facts there can be no question but that Morris could establish a homestead for himself and minor children on his undivided one-half interest in the 275-acre tract. Nor can there be any question but that he could thereafter by use extend that homestead to other land owned by him until it was fixed upon as much as 200 acres of land. The undisputed facts show that he purchased and used the 20 acres as a part of his homestead during his lifetime, and it must remain so impressed with the homestead character after his death for the use of his widow and minor children, of which use he could not deprive them by will. Pressly Heirs v. Robinson, 57 Tex. 453; Crocker v. Crocker, 46 S. W. 870, 19 Tex. Civ. App. 296; Gilliam v. Null, 58 Tex. 298; Baldeschweiler v. Ship,

50 S. W. 644, 21 Tex. Civ. App. 80; Brooks v. Chatham, 57 Tex. 31; Johnson v. Burton, 87 S. W. 181, 39 Tex. Civ. App. 249; Simonton v. Mayblum, 59 Tex. 10; Const. art. 16, § 51; Rev. St. art. 3786; Redding v. Boyd, 64 Tex. 498.

Appellants cite Rogers v. Ragland, 42 Tex. 422, and other cases supporting the proposition that a widow cannot abandon the homestead as it existed at the time of the death of her husband and select another out of the estate in lieu of it; but those cases are not in point here, since the widow is not abandoning the homestead as it existed at the time of her husband's death. The facts in this case and in the Rogers-Ragland Case are similar, in so far as they relate to the question of Morris and his first wife establishing a homestead on the 275-acre tract, and we think that case conclusively supports our view that they did not establish a homestead on said tract prior to her death under the undisputed facts.

Instead of establishing the homestead upon only 157½ acres, we think it should have been extended to and established upon 200 acres out of the whole of 295 acres owned by Morris at the time of his death. This conclusion is based upon the fact that Morris owned, in his own separate right, by purchase 157½ acres of the entire 295 acres, and that, by reason of his children's election to take under his will, their one-half interest in the 275-acre tract became wholly his property. We will discuss this phase of the homestead in connection with the issue raised involving a proper construction of the will as to whether the undivided one-half interest of the children in the 275-acre tract became wholly the property of Morris upon their election to take under the terms of the will.

The trial court was called upon to construe the will of Morris to ascertain his intention in the following particulars: First. Did it put his children to an election to take under its terms? Second. If so, did their one-half interest in the 275-acre tract, inherited from their mother, become by such election a part of the testator's estate and subject to the payment of his debts, including the unsecured debts of appellants? Third. And, if so, did the insurance money payable under the terms of the policy to the children by name, and also devised to them by the will, become, by their election to take under the will, bound in any manner for the payment of the testator's debts, including the unsecured debts of appellants?

We will not attempt to set out the entire judgment relating to these particular matters, but will state only the substance.

[4] On the first question the trial court concluded that the will put the children of Morris to the election to take under its terms. In this we think the trial court's judgment is correct, and all parties to this suit concede it to be correct. Appellees, however, contend that they obtained nothing under their election to take under the will to which they would not have been entitled had they made no such election. To this contention we do not agree, for the will required that they must consider their interest in the 275-acre tract as belonging wholly to the testator, or otherwise they would lose the fee to the 157½ acres comprising the separate property of the testator at the time of his death, after it had ceased to be impressed with its homestead character for their use. The language of the will is not difficult to construe with reference to this, but simply provides that the "community property (the 275-acre tract) of myself and deceased wife, Rosetta P. Morris" shall "be held under the terms of this my will as wholly mine, and should any one or more of my children * * * not agree to and abide by the terms of this my will * * * no part of my estate or life insurance shall pass to such party or parties not consenting to the terms of this my will."

It may be well to here note that this language also undertakes to bind in some manner the insurance money to be collected on the life of the testator, which matter will be hereinafter discussed. This language is clear and unequivocal, and shows without question that it was the intention of the testator to treat and devise the entire land as his own, thereby putting the co-owners of the land to their election whether they would take under the will or whether they would take the part of the land inherited from their mother and lose that which the will bequeathed to them in fee simple. The identical question here raised was decided in the case of Massie v. Massie, 118 S. W. 219, 54 Tex. Civ. App. 617. In that case, where a testator devised the community property to himself and his deceased wife to his children, share and share alike, providing that, if any child contested the will, such child should forfeit his or her right under the will, and could only take the property belonging to its deceased mother, it was held that such a devise required an election to take as an heir or under the will. It was also held that such a provision was valid and binding upon the parties interested. This same rule was announced and distinguished by the Supreme Court in the case of Avery v. Johnson, 192 S. W. 543, 108 Tex. 294.

As we interpret the trial court's judgment in this respect, it decreed that the children should be required to elect; that the court alone could and did elect for the minor children; that their one-half undivided interest in the 275-acre tract became vested after their election in the trustee in trust for their use and benefit for the period of the trust, subject only to the payment of secured debts against any land passing to them under the terms of the will; that as to the,

matter of paying the secured debts out of their one-half interest in the land it was entirely within the discretion of the executor or trustee to do so; and that, since he was administering the estate independently of the probate court, the court had no power to compel him to so use the property.

[5-8] We are of opinion that upon the election of the children to take under the will their one-half interest in the 275-acre tract became wholly the property of the testator for all purposes to which his estate under the law and under the terms of the will might be subjected, and that such ownership dated back to the date of his death. It cannot be questioned but that under the doctrine of election, especially in cases where the parties required to elect are minors, the election must in some way result for their benefit. Avery v. Johnson, supra. It is undisputed that Morris moved upon the 275-acre tract with his minor children soon after their mother's death. It is also undisputed that he exercised the entire control and management of this property during his lifetime. The record also shows that he personally paid many of the debts of the first community, which authorized him to reimburse himself out of the community property. Stone v. Jackson, 210 S. W. 953, 109 Tex. 385. The will evidences an intention on his part to consider the land as wholly his, and to require the children to so consider it. The testimony is undisputed that he had occupied and used the whole 295 acres until his death. Under such state of facts we think that, since the children are required to bring their property into the estate of their deceased father, thereby subjecting it to the rights of the creditors, equity would also require that they receive and have set aside to them a homestead of 200 acres out the whole 295 acres so owned as the separate property of the testator at the time of his death. That being true, in setting aside the homestead of 200 acres out of the larger tract covered by valid liens, the excess of 95 acres should first be sold to discharge the liens, and the proceeds of the sale should not be used for the payment of debts generally until the liens upon the property had been fully satisfied. Harrison v. Oberthier, 40 Tex. 388; Mullins v. Yarborough, 144 Tex. 14; Minter v. Burnett, 38 S. W. 350, 90 Tex. 245.

[9] Since appellants' rights are thus contingent upon there being an excess over the amount necessary to discharge the purchase-money liens, we think the court should make inquiry to first ascertain whether there would be any such excess; and, if it is found that none would exist, then the court should deny appellants' right to subject this property to the payment of their debts. In other words, if it be found that the 95 acres after it is partitioned from the homestead of 200 acres cannot be sold for more than enough to pay the purchase-money debts against the entire 295 acres with some excess remaining, then it would certainly be a useless thing to require its sale, or appellants would have the right to pay off the lien indebtedness and take the 95 acres of land in excess of the homestead.

[10] The judgment attacked decreed that the insurance money on Morris' life was bound by the terms of his will to the extent that the beneficiaries named in the policies were required to permit it to be used as a part of the trust fund created for them by the will; that at his election the guardian or trustee could pay debts secured by a lien on any land passing under the will to the beneficiaries of the policies; but that the court was without power to compel the guardian or trustees to exercise that election. We have reached the conclusion that the judgment correctly construes the will in this respect.

Appellants insist that, upon testator's children electing to take under the will, the insurance money became a part of his estate, and subject to the payment of his debts. It is also urged that by the language of the will the testator intended that the insurance money be charged with his debts; and, further, that the following language made the insurance money a part of testator's estate:

"At his election, he may use said funds in any lawful manner, as executor of my estate, after they are collected, as fully as though such insurance was payable to my estate, instead of to my said children."

[11] Standing alone, this language might have the effect contended for by appellants; but, when construed in connection with all the language of the will, it becomes evident that such was not the intention of the testator. The language quoted is general in its nature, and the authority vested in the executor or trustee by it is discretionary. The estate is being administered under the terms of the will independently of the probate court, and it is well settled that, under such a state of facts, no court has the power to compel the executor or trustee to exercise his election in the matter. There is no language in the will which would indicate that the testator was attempting by it to change the beneficiaries named in the policies; but the contrary is clearly shown, for in paragraph 6 of the will the testator states that—

"My life insurance is payable to my said children (or their guardian) and is to be subject to the control of the guardian I hereinafter appoint for them. I here give such guardian full authority to collect said insurance and to keep the same together as stated under section five hereof, and also to use the same in paying any lien or debt against any property passing to said children by this will."

[12, 13] In paragraph 5 of the will the testator specifically states that his property consists of the "community property of my-

self and deceased wife, Rosetta P. Morris," which clearly shows that the testator was not considering the insurance money as a part of his estate, and that he only intended that it be considered as such upon the refusal of his children to elect to take under his will, and upon their refusal to bring the insurance money into the trust fund. The fact that by general provision in paragraph 2 the testator expressed the desire that his debts be paid, and by further providing in paragraph 7 of the will that the real estate might be sold to pay them and to carry out the trust, does not in any manner charge the insurance money, payable by the policies to his children and also specially devised to them by the will, with his debts. We think the specific devise or provision with reference to the insurance controls the general provision relied upon by appellants under the well-settled rule that a specific provision of a will controls one of a general nature. Classen v. Freeman (Tex. Com. App.) 236 S. W. 979.

[14] In this connection appellees insist that, since they are named beneficiaries in the policies, the insurance forms no part of the testator's estate, and is not subject to his will. But this contention is aside the mark. Admitting that the insurance policies are payable to the children, still the testator would have the right to attach by his will any conditions or limitations not inconsistent with the terms of the insurance contract he desired, and might even change the name of the beneficiaries by his will, if such change be not in conflict with the terms of the policies. It is not contended that the children as named beneficiaries in the policies have vested irrevocable interests, nor that they have indefeasible interests therein. Under such facts and circumstances, there being nothing in the policies to the contrary, the testator had the right to attach any conditions or limitations upon the policy that he desired, or to even change the beneficiaries by will. Splawn v. Chew, 60 Tex. 532; 40 Cyc. 1049, § 1, cases notes 36 and 37.

From what has been said we affirm in part, and in part reverse and remand, the trial court's judgment, with instructions to proceed in accordance with this opinion, should there be another trial of the case.

Affirmed in part, and in part reversed and remanded.