

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Honorable J. D. Looney
County Auditor, Bowie County
Boston, Texas

Dear Sir:

Opinion No 0-5826
Re: Report of sale of United
States Government Bonds
in connection with the
administration of the
estate of W. J. Buchanan,
deceased

     Your letter of April 1, 1944, requesting the opinion of this department on the questions stated therein reads, in part, as follows:

    "I enclose herewith certified copies of application for order of sale, report of sale, and second annual report of administratix in connection with the administration of the Estate of W. J. Buchanan, Deceased, Mrs. Helen Seeger, Administratrix, all of which have a bearing on an opinion which I am going to request in this letter.

    "Mrs. Helen Seeger, administratrix of the above mentioned estate, filed her second annual report sometime during the month of March, 1944. Attached to this report are Exhibits 'A,' 'A-1' and 'B.' Exhibit 'B' purports to show all cash received and disbursed.

    "During the period of this report the administratrix made application to sell certain U. S. Government bonds of the par value of $1,376,000.00, as shown in the attached application for order of sale. Order of sale was issued on this application, but up to the time of the filing of the annual report attached hereto, no report of sale had been made on the sale of these bonds. When the County Judge examined the report, he found that the only item of cash shown in connection with this sale was an item under Receipts in Exhibit 'B' of $12,789.39, said item being listed as 'Difference

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable J. C. Mooney, page 2

between value of U. S. Government securities surrendered and value of U. S. Government securities received in exchange.' Upon being advised by the County Clerk that no report of sale had ever been filed on the sale of the bonds in question, the administratrix was ordered to file said report, a copy of which is attached hereto. Counsel for the administratrix contends that these bonds were not sold as set out in his application for sale, but were merely exchanged for other U. S. Government bonds at a profit of $12,789.39, and administratrix reports as cash received only the profit realized from this so called exchange.

"It is my contention, and that of the County Judge, that the report sale speaks for itself in the fact that these bonds were sold at the request of the administratrix by the Chase National Bank to a bond house in New York, and the other securities mentioned purchased with money realized from said sale, leaving a balance in cash of $12,789.39, profit on the sale and purchase.

"We contend further that although the report of sale states that these bonds were exchanged, they were in reality not exchanged, but sold, and regardless of the manner of sale, this money came into the hands of the administratrix as cash receipts whether the money was actually in a bank in New York or in Bowie County; that the reason the bonds were sent to New York for sale was because there was no market in Bowie County for such a large amount of bonds, and in order to sell said bonds they had to be sent to a proper market.

"Neither the report of sale nor the second annual report has been approved by the County Judge. The question is, should the report of sale show a sale of these bonds instead of a transfer of securities with a cash profit involved, and should the entire amount of the sale, to-wit: $1,513,259.64 be shown on the second annual report under the heading of Receipts, instead of the manner in which it is now reported, to-wit: 'Difference between value of U. S. Government securities surrendered, and value of U. S. Government securities received in exchange, $12,789.39.'
* * **

In the application of the administratrix to sell such securities, the administratrix prays that she be authorized to sell said bonds and reinvest the proceeds in government tax free bonds with such other orders as may be proper in the premises.

The order of sale issued on the above mentioned application is as follows:

"IN THE COUNTY COURT OF BOWIE COUNTY, TEXAS.

"IN RE: ESTATE OF W. J. BUCHANAN,   )
                                  )   No. 5571
    "DECEASED.                 )

## "O R D E R

"On this 20th day of November, 1943, came on for hearing the application of Mrs. Helen Seeger, Administratrix, for authority to sell on the market United States Government bonds of the par value of $1,376,000.00, fully described in said application, and to reinvest the proceeds thereof in non-taxable United States Government securities, and the Court, after examining said application and hearing the evidence thereon, is of the opinion that said application should be, and it is hereby granted, and said Administratrix authorized to sell the securities listed in said application at the market price and reinvest the proceeds thereof in non-taxable United States Government bonds.

"/s/ J. Fred Hoffman
"County Judge."

The report of the administratrix on the sale of the bonds, based on the foregoing order of sale, is as follows:

"REPORT OF ADMINISTRATRIX ON SALE OF BONDS

"IN THE COUNTY COURT OF BOWIE COUNTY, TEXAS.

"IN RE: ESTATE OF W. J. BUCHANAN    )  No. 5571
        DECEASED              )

"Comes Mrs. Helen Seeger, Administratrix in the above proceeding, and reports that subsequent to the order of this Court dated November 20, 1943, in respect to the disposition of United States Government bonds of the par value of $1,376,000.00, she sent said bonds to The Chase National Bank of New York with instructions to secure therefor 2⅛% United States Treasury Bonds 64/69 of the par value of $1,500,000.00; that said Bank delivered said bonds to C. J. Devine & Company, New York dealers in government bonds and received credit for the market value thereof; to-wit: $1,513,259.64; that said C. J. Devine & Company thereupon charged said The Chase National Bank of New York with the sum of $1,500,470.25, representing market value of 2⅛% United States Treasury Bonds 65/69 of par value of $1,500,000.00, and also gave said Bank credit in cash in the sum of $12,789.39.

Honorable J. D. Looney, page 5

"Your Administratrix shows that in lieu of
the United States Government bonds of par value of
$1,376,000.00, referred to in the order of this
Court dated November 20, 1943, she has received 2½%
United States Treasury Bonds 64/69 of the par value
of $1,500,000.00 and has received in cash the sum
of $12,789.39, both of which items are included in
her report made as of February 29, 1944.

"MRS. HELEN SEEGER, ADMINISTRATRIX

"By: A. L. Burford

"Her Attorney."


Article 3553, Vernon's Annotated Civil Statutes, pro-
vides:


"No sale of any property of an estate shall
be made by an executor or administrator without an
order of the court authorizing the same."


Article 3583, Vernon's Annotated Civil Statutes,
provides:


"All sales of property of an estate shall be
reported to the court ordering the same within thirty
days after the sales are made. The report of sale shall
be in writing and shall be subscribed and sworn to by
the executor or administrator. Said report may be made

in term time or in vacation, and when returned, shall be filed by the clerk and the filing thereof noted upon the judge's docket, and shall show:

"1. The time and place of the sale.

"2. The property sold, describing the same.

"3. The name of the purchaser of such property.

"4. The amount for which each article of property sold.

"5. The date of the order of the court authorizing the sale.

"6. The terms of the sale, and whether at public auction or made privately."

Article 3430, Vernon's Annotated Civil Statutes, provides:

"When an executor or administrator deems if for the interest of the estate to purchase or exchange property, or to take any claims or property for the use and benefit of the estate in payment of any debt due or owing to the estate, or to compound bad or doubtful debts due or owing the estate, or to make compromises or settlements in relation to property or claims in dispute or litigation, or to compromise or pay in full any secured claim which has been allowed and approved as required by law against the estate by conveying the real estate securing the payment of the claim to the holder thereof in full payment, liquidation and satisfaction of such claim and the cancellation of any and all notes, deed of trust, mortgages or other liens evidencing or securing the payment of such claim, he shall present an application in writing to the County Court representing the facts; and if the Court is satisfied that it will be to the interest of the estate to grant the same, an order shall be entered showing the authority granted. The executor or administrator may also release mortgages upon payment of the debt secured thereby."

Honorable J. D. Looney, page 7

Generally speaking, "probate courts generally have power to confirm or to disapprove a sale, and in the absence of a clear showing to the contrary, a court's authority to act in confirming a sale will be presumed. A court may confirm a sale even though it was not in accordance with the order." Corpus Juris Secundum, Vol. 34, Section 607 (a), page 581.

In the case of Blickensderfer v. Hanna, 132 S. W. 678, at page 682, it is stated;

"* * * Again and again this court has held sales of real estate under orders of the probate courts to be judicial sales and the confirmation of such sales by the probate court is the crowning act and cures all prior irregularities, provided, of course, always, that the court had obtained jurisdiction of the subject-matter and over the parties. * * *"

It is stated in your letter that "neither the report of sale nor the second annual report has been approved by the County Judge." Counsel for the administratrix contends that these bonds were not sold as set out in his application for sale, but were merely exchanged for other United States Government bonds at a profit of $12,789.39, and the administratrix reports as cash received only the profit realized from this transaction. While on the other hand, among other things, the County Judge contends that although the report of sale states that these bonds were exchanged, they were in reality not exchanged, but sold, and regardless of the manner of sale, this money came into the hands of the administratrix as cash receipts whether the money was actually in a bank in New York or in Bowie County. It is apparent that the paramount question involved is whether the County Judge is entitled to the commission under Article 3926, Vernon's Annotated Civil Statutes, on the entire proceeds involved in the above mentioned transaction or whether the County Judge is entitled only to the commission allowed by Article 3926 on the $12,789.39 cash actually received by the administratrix.

Although not specifically asked in your request, as eretofore stated, it is apparent that the main question involved

concerns the amount of commission due the Judge under Article 3926. It is our opinion that the County Judge would be entitled to the commissions provided by Article 3926 on the $12,789.39 and not on the $1,513,259.64.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Ardell Williams*

Ardell Williams
Assistant

AW:EP

(Acting)